**COLE, SCHOTZ, MEISEL,**
**FORMAN & LEONARD, P.A.**
A Professional Corporation
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey  07602-0800
201-489-3000
201-489-1536  Facsimile
Steven I. Adler
Attorneys for Plaintiff, Lauren X. Topelsohn

| | | |
|---|---|---|
| LAUREN X. TOPELSOHN,<br><br>Plaintiff,<br><br>v.<br><br>JONATHAN ERIC ROSENBERG, an individual; JER RECEIVABLES, LLC, a New Jersey limited liability company; REGENCY REPORTING, INC., a New Jersey corporation; LINDA ROSENBERG, an individual; ROSENBERG & ASSOCIATES, INC., a New Jersey corporation; INTERNATIONAL PORTFOLIO, INC., a corporation; and JOHNS DOE 1-10<br><br>Defendants. | : : : : : : : : : : : : : : : : : : : | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY CIVIL ACTION NO.<br><br>**Document Electronically Filed**<br><br><u>Civil Action</u><br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff Lauren Topelsohn, Esq. ("Plaintiff" or "Topelsohn"), residing at 82 East

Madison Avenue, Florham Park, New Jersey, 07932 by way of Complaint alleges and says as

follows:

## NATURE OF THE ACTION

1.      This action arises from a fraudulent scheme perpetuated by defendant Jonathan Eric Rosenberg ("JRosenberg") through his alter-ego, defendant JER Receivables, Inc. ("JER") by which he preyed upon Plaintiff, took advantage of her trust and their long-term professional relationship in an effort to cheat her out of $200,000, which he used for defendants' own personal financial gain and advantage.

2.      Specifically, JRosenberg, individually and on behalf of JER, and with the knowledge and assistance of defendant Rosenberg & Associates, Inc. ("Rosenberg & Associates"), Plaintiff's former employer and a company of which JRosenberg is an officer, convinced Plaintiff to loan JER $200,000, pursuant to a written promissory note which later was secured by JRosenberg's personal guaranty, for the alleged purpose of pooling such monies with loans from other individuals and purchasing a "portfolio" of uncollected, medical accounts receivable, either directly or through Defendant International Portfolio, Inc. ("IPI"), a company whose owners JRosenberg referred to as his "partners."

3.      In consideration for Plaintiff's loan, JER and JRosenberg promised to pay Plaintiff a specified rate of interest based on the principal amount of her loan during its term.

4.      In truth, however, it appears that JRosenberg used Plaintiff's monies to pay himself enormous "management fees" based on JER's purported oversight of Plaintiff's "investment," to pay his own personal expenses and those of his mother, defendant Linda Rosenberg ("LRosenberg"), who owns ninety-nine percent of Rosenberg & Associates, in order to subsidize their lavish life styles, including their $10 million home in Florida.

5.      In addition, upon information and belief, JRosenberg used Plaintiff's monies to pay other creditors of JER and the debts of Rosenberg & Associates and defendant Regency Reporting, Inc. ("Regency"), a company owned by JRosenberg and managed by Rosenberg &

2

Associates, including a $1.75 million loan from Bank of America and to pay the interest or repay the principal due other individuals, creating an illusion of profitability which the Rosenbergs touted to potential new contributors.

6. Upon information and belief, since October 2007, JRosenberg, with the knowing assistance of LRosenberg and by and through Rosenberg & Associates, Regency, JER and John Does 1-10, has raised substantial monies and now claims to manage over $155 million in medical debt receivables.

7. Upon the maturity of Plaintiff's loan, JRosenberg, individually and on behalf of JER, repeatedly appealed to Plaintiff's "friendship" to excuse JER's failure to pay Plaintiff and his failure to honor his personal guaranty, and ultimately, despite Plaintiff's repeated requests and JRosenberg's valueless promises that Plaintiff would be paid in full, failed to return her money.

8. As set forth herein, defendants JER and JRosenberg, with the knowledge and assistance of Rosenberg & Associates and LRosenberg, obtained the loan from Plaintiff by means of mail fraud and wire fraud, in violation of, among other things, 18 U.S.C. §§1961 et. seq., the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), based upon a pattern of racketeering activity consisting of mail fraud under 18 U.S.C. §1341 and wire fraud under 18 U.S.C. §1343.

9. This action further arises from the termination of Plaintiff's employment from Rosenberg & Associates and, more specifically, by the actions of JRosenberg and LRosenberg. Those defendants terminated Plaintiff's employment in violation, inter alia, of the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1 et seq. ("CEPA"), and breached

Plaintiff's contract of employment by failing to pay Plaintiff severance, benefits and other perquisites of employment owed to Plaintiff under that contract.

10.     Plaintiff also asserts claims against those defendants under Section12 of the Securities Act, 15 U.S.C. §77l, Title I of the Federal Electronic Communications Privacy Act (the "ECPA"), 18 U.S.C. § 2510-22 (hereafter, the "Wiretap Act"), Title II of the ECPA, 18 U.S.C. §§ 2701-12, the Stored Communications Act (the "SCA"), 18 U.S.C. § 1030 et seq., the Federal Computer Fraud and Abuse Act ("CFAA"), and the New Jersey Wiretapping and Electronic Surveillance Act, N.J.S.A. 2A:38A et seq. ("WESA"), arising out of those defendants' continuing and wrongful interference with, and exercise of dominion and control over, confidential and legally privileged electronic communications between Plaintiff, an attorney at law, and her clients other than defendants.

11.     This action is further brought under common law and includes claims for fraud, negligent misrepresentation, breaches of contract, promissory estoppel, breaches of fiduciary duty, tortious interference with contract and with prospective economic advantage, invasion of privacy, an accounting, a declaratory judgment and a constructive trust.

12.     As a result of the fraudulent, malicious and tortious conduct of JRosenberg and LRosenberg (together the "Rosenbergs"), JER, Regency and Rosenberg & Associates, Plaintiff was deprived of her money, her employment was abruptly and wrongfully terminated, her reputation was damaged, and her statutory, constitutional and contractual rights were eviscerated.

## JURISDICTION AND VENUE

13.     This action arises under the laws of the United States, more specifically 18 U.S.C. § 1964 (RICO), 15 U.S.C. § 77 (the Securities Act), 18 U.S.C. § 2510 (the Wiretap Act), 18 U.S.C. § 2701 (the SCA) and 18 U.S.C. 1030 et seq. (the CFAA), such that this Court has

4

original jurisdiction under 28 U.S.C. §1331.  This Court also has supplemental jurisdiction over the related state law causes of action pursuant to 28 U.S.C. § 1367.

14.     Venue is appropriate under 28 U.S.C. §1391(b) in that each of the defendants resides in this State and/or a substantial part of the events or omissions giving rise to the claims occurred in this District.

## THE PARTIES

15.     At all times hereinafter mentioned, Plaintiff was an individual residing at 82 East Madison Avenue, Florham Park, New Jersey, 07932.

16.     At all relevant times, JRosenberg was an individual residing at 19 Cliff Street, West Orange, New Jersey.

17.     Upon information and belief, at all relevant times JER was a New Jersey limited liability company with offices located at 425 Eagle Rock Avenue, Roseland, New Jersey 07068 and 1464 Camborn Drive, Macedon, NY 14502-8829.

18.     At all relevant times, JRosenberg was the founder, President and, upon information and belief, managing member of JER.  In fact, JER is an acronym for JRosenberg's initials.

19.     Upon information and belief, at all relevant times JER was in the business of soliciting loans from private and institutional "investors," pooling those monies for the alleged purpose of purchasing uncollected accounts receivable from medical institutions (hereafter "Debt Instruments") and collecting the debt due thereon through various collection agencies and law firms.

20.     Upon information, at all relevant times JER purchased such Debt Instruments directly and through other persons and entities including, but not limited to, IPI.

49216/0001-7623450v4

21.     At all relevant times, Regency was a New Jersey corporation engaged in the business of transcription court reporting services with offices located at 425 Eagle Rock Avenue, Roseland, New Jersey, 07068.

22.     At all relevant times, JRosenberg was the President and owner of Regency.

23.     At all relevant times, LRosenberg was an individual residing in Maplewood, New Jersey, and was the President and majority shareholder of Rosenberg & Associates.

24.     At all relevant times, Rosenberg & Associates was a New Jersey corporation engaged in the business of transcription court reporting services with offices located at 425 Eagle Rock Avenue, Roseland, New Jersey, 07068, and managed the operations of Regency.

25.     Upon information and belief, IPI was a corporation with offices located in Norristown, Pennsylvania, and was engaged in the business of buying, selling and collecting uncollected Debt Instruments.

26.     Defendants Johns Doe 1-10 are persons and/or entities who, upon information and belief, contributed, in whole or in part, to the losses sustained by Plaintiff, are in possession of the money loaned by Plaintiff to JER and/or tortiously interfered with Plaintiff's employment at Rosenberg & Associates, and whose names are not yet known and as to whom leave will be sought to amend this Complaint to state their names and appropriate claims in the event that the facts revealed in the course of discovery warrant such amendment.

## FACTS COMMON TO ALL CLAIMS

### The Fraudulent Scheme

27.     In or around June 2002, Plaintiff accepted employment at Rosenberg & Associates as General Counsel and Chief Operating Officer for that corporation and its affiliated companies including, but not limited to, Regency, Atlantic City Court Reporting, LLC, Albert J. Grosser & Associates, Guy J. Renzi & Associates, Inc. and Verbatim Court Reporting Services.

6

(Hereinafter, Rosenberg & Associates and its affiliates are referred to collectively as the "Companies").

28.     The Companies are all engaged in providing litigation support services, including court reporting services.

29.     Upon information and belief, in or around 2007, JRosenberg founded JER.

30.     In or about 2007, JRosenberg informed Plaintiff that JER was in the business of pooling money loaned by individuals to purchase a "file" or "portfolio" of Debt Instruments and collecting same through collection companies and attorneys.

31.     According to JRosenberg, individuals typically loaned JER a sum of money for a period ranging from six to thirteen (13) months, during which time they were paid a monthly sum by JER reflecting the debt collected during that period and, at the conclusion of the loan, received a full return of their principal with interest thereon based on the duration of the loan period.

32.     JRosenberg claimed in an e-mail to Plaintiff dated October 17, 2007, that JER's "last investors" had seen a twenty-two percent (22%) return on their principal in five months.

33.     Based on their long-standing relationship and JRosenberg's assurances that he was looking out for Plaintiff's best interests, on or about October 24, 2007, Plaintiff agreed to loan JER $50,000 by way of two checks which, at JRosenberg's direction, were made payable to IPI, in exchange for which JRosenberg, individually and on behalf of JER, expressly promised Plaintiff an annual rate of return of thirty percent (30%).

34.     JRosenberg referred to IPI's principals as his "partners" and informed Plaintiff that IPI would be overseeing the collection of the unpaid medical receivables.

7

35.     Although Plaintiff's principal of $50,000 was ultimately repaid, the rate of return received by Plaintiff was 18.95% rather than the 30% promised.

36.     After Plaintiff advised JRosenberg and JER of this shortfall, they repeatedly promised, orally and in writing, that Plaintiff would be paid the full rate of return that had been promised, equaling approximately $8,750.

37.     To date, despite JRosenberg's repeated representations, neither JER nor JRosenberg has paid Plaintiff any amount related to such shortfall.

38.     Thereafter, in furtherance of Defendants' fraudulent scheme, as aforesaid, in or about early March 2008 JRosenberg excitedly informed Plaintiff that he was offering his closest friends a "unique" opportunity to participate in what he referred to as a "country club deal."

39.     Specifically, JRosenberg advised Plaintiff that IPI was involved in litigation with a Florida hospital and that IPI was offering JRosenberg's "friends and family" an opportunity to loan IPI, through JER, the money required to fund the cost of that litigation.

40.     JRosenberg advised Plaintiff that his mother, LRosenberg, other family members and his "partner's" daughter, were investing with him and that the returns would be "unbelievable."

41.     When Plaintiff advised JRosenberg that she had little available money inasmuch as her $50,000 principal had not yet been repaid, JRosenberg told her that several of his "investors" were borrowing against their homes and that, based on the projected returns, she should borrow whatever she could to participate in the "deal."

42.     During the next several days, JRosenberg ratcheted up his pressure tactics to extract the monies defendants required from Plaintiff.  JRosenberg repeatedly inquired, both orally and in writing, whether Plaintiff intended to participate, attempted to convince her to do

8

so, and advised her that he was making this opportunity available to her based on "their friendship" and because she was "virtually family" to him.

43.     JRosenberg also boasted of the enormous success he had realized through JER, the "phenomenal" returns he and LRosenberg had received as a result of purchasing Debt Instruments, that one of his "partners" had retired from the practice of law to devote his full-time efforts to one of JRosenberg's other medical-debt businesses, and described the fortunes that IPI's owners had amassed whom he described as "multi-millionaires."

44.     On or about March 11, 2008 JRosenberg sent Plaintiff an e-mail advising her that the "[d]eal [was] closing Friday, but have [sic] a little while longer for people trying to get money together."  In that same e-mail, JRosenberg provided Plaintiff with a monthly interest payment schedule based upon a $200,000 loan, including the date and amount of each payment and the total return she would receive if the loan was not prepaid prior to the expiration of its term.

45.     In his e-mail, JRosenberg further informed Plaintiff that, although the "deal has a term of 12 months, it [was] very possible that [her] money will be held out only for 5 to 7 months" and that "[u]pon payment of the last interest payment, [she would] receive [her] initial investment back."

46.     In reliance upon JRosenberg's representations and assurances, Plaintiff drew down on her home equity line of credit and agreed to loan JER the sum of $200,000 (the "Principal"), and Plaintiff and JER entered into a written Promissory Note dated March 15, 2008 (the "Promissory Note").  A copy of the Promissory Note is annexed hereto and incorporated herein as Exhibit "A").

47.     The Promissory Note incorporated the terms set forth in JRosenberg's March 11, 2008 email including, among other matters, a one year term, a prepayment provision, and the schedule of twelve (12) monthly payments in the amounts specified by JRosenberg, which were to be made on the 15th day of each month during the term of the Promissory Note.

48.     Commencing on April 15, 2008 and continuing up to and including November 15, 2008, Plaintiff received a monthly payment from JER in accordance with the terms of the Promissory Note.

49.     Each of the eight payments on the Promissory Note was made from an account held in the name of JER and was mailed from JER's offices in Macedon, New York to Plaintiff at her office in Roseland, New Jersey.

50.     By December 29, 2008, however, Plaintiff had not received the December 15, 2008 payment and contacted JRosenberg to inquire as to its status.

51.     By e-mail dated that same day, JRosenberg advised Plaintiff that what he identified as the Jackson Hospital litigation (the "Jackson Hospital Litigation"), had been settled for "approximately $20M," and that the "deal was now over."

52.     The Jackson Hospital Litigation had, in fact, settled three months earlier.  At no time did JRosenberg disclose this material fact to Plaintiff but instead intentionally and fraudulently concealed it from her.

53.     By way of his December 29th e-mail JRosenberg further informed Plaintiff that she would receive the December 15, 2008 payment and her Principal "by the second week in January."

10

54.     However, in furtherance of defendants' scheme, which included avoiding the return of Plaintiff's $200,000 Principal, by that same e-mail JRosenberg urged Plaintiff to "roll over" the Principal into a "new investment" with JER.

55.     As JRosenberg put it, because "IPI [had] won so much money" in the Jackson Hospital Litigation, "it is willing to do my investors a courtesy which will allow them to make even more money."

56.     According to JRosenberg:

> 95% of my investors are doing this, including my mom, you can roll your $200,000 back into a brand new debt deal ... .  If you choose to reinvest the money, then that new investment will be put into a brand new deal for January (and you can add to it as well if you'd like) and that deal will produce approximately a <u>25% to 30% return over the next 13 to 15 months just like all my deals have done and will continue</u> to do as they all have no correlation to the equity markets.  If you choose to take your $200,000 and last interest payment back, then you will be hit with ordinary income taxes. ... Think about it and let me know by Friday.

A copy of the JRosenberg e-mail, dated December 29, 2008, is annexed hereto and incorporated herein as Exhibit "B" (emphasis added).

57.     During the next several weeks, JRosenberg continued to barrage Plaintiff with inquiries as to whether she intended to "roll over" her Principal, encouraging her to do so, describing the terms of her participation and advising her by email, dated January 6, 2009, that she would "be invested in JER Receivables, LLC – this is my deal."

58.     Despite JRosenberg's pressure tactics, on January 28, 2009 Plaintiff advised JRosenberg that she did not want to "roll over" her Principal and participate in the proposed "deal."

59.     JRosenberg was unwilling to accept Plaintiff's decision.  Although JRosenberg responded by e-mail that same day that it was her decision to make, he continued to press

Plaintiff to rollover her $200,000 Principal, which JER still had not returned despite his promise that it would be repaid by "the second week in January," by emphasizing that this was one of the deals his family was in, that he was "trying to help [her] achieve success," and representing to and assuring Plaintiff that her money would be protected at all times.

60.     As part of his pressure tactics, on February 2, 2009 JRosenberg forwarded to Plaintiff an article, dated January 23, 2009, that apparently had appeared on the website www.insidearm.com in which Richard Schusterman, referred to therein as IPI's Chief Executive, touted the upward market trend that medical debt purchasing companies were experiencing.

61.     In addition, that same day JRosenberg e-mailed Plaintiff a letter, dated December 16, 2008, from Peter J. Tucci, Esq. of Fox Rothschild, LLP, which had been purportedly sent to IPI's "major investor groups," including JER.

62.     Based on Mr. Tucci's letter, Plaintiff understood that JER received and monitored collection reports that enabled JER to assess the value and security of the debt in its portfolios, and that JER filed UCC-1 financing statements as recommended to protect the interests of JER participants.

63.     Upon information and belief, JER did not follow the procedures outlined in Mr. Tucci's letter, facts that JRosenberg and JER intentionally failed to disclose to Plaintiff.

64.     In reliance upon the foregoing, and on JRosenberg's repeated representations that he would never do anything to hurt her, Plaintiff informed JRosenberg during an interstate telephone call on or about February 5, 2009 that she would consider "rolling over" the Principal she had loaned to JER if JRosenberg would personally guaranty the return of her money.

65.     During that telephone call Plaintiff further informed JRosenberg that, without his personal guaranty, she would not rollover her Principal and asked that he return it immediately.

49216/0001-7623450v4

66.     In response, JRosenberg agreed to personally guaranty the re-payment of Principal, but <u>not</u> the "approximately 25% to 30%" rate of interest that he had repeatedly promised would be earned on it.

### The Amended And Restated Promissory Note And Personal Guaranty

67.     Following multiple communications by telephone and e-mail over the next few days, during which JRosenberg assured Plaintiff that she "co[uld] pull out [of the investment] after 13 months" and that he was "<u>capping the return at 30%</u> over sixteen months" with respect to the new debt portfolio, which he later referred as "Theta", Plaintiff agreed to extend the term of the loan of her Principal to JER.

68.     However, when Plaintiff presented JRosenberg with a one-year amended and restated promissory note for signature, that amended and restated the terms of the Promissory Note, and incorporated the representations JRosenberg had repeatedly made with regard to Theta, he balked.

69.     JRosenberg advised Plaintiff that, although he was certain she would realize a return in excess of twenty-five percent (25%), he was only comfortable committing to an interest rate of fifteen percent (15%), but would pay her whatever amount was realized as a result of her loan in excess of that amount.

70.     JRosenberg also asked Plaintiff to revise the proposed amended and restated promissory note by extending its term to fifteen (15) months, since he purportedly wanted to ensure that Plaintiff earned the maximum amount of interest possible.

71.     Convinced by JRosenberg that he only had her best interests in mind, on or about February 9, 2009 Plaintiff entered into a written, amended and restated promissory note with JER

dated January 1, 2009 (the "Restated Promissory Note"), a true copy of which is annexed hereto and incorporated herein as Exhibit "C."

72.     As an accommodation to JRosenberg's request for a longer term, Plaintiff agreed to a term of 13 months which Plaintiff had the option to extend to 15 months, that is, until May 1, 2010 (the "Extended Maturity Date"), in which event interest would "continue to accrue on the unpaid principal through the Extended Maturity Date." (Id. at §1).

73.     The Restated Promissory Note required full payment of the unpaid Principal and all interest in the "event of default" by JER, as "Payor," that continued for a period of five (5) days from the date of notice of same.  An "event of default" included, among other matters:

> a.      If Payor shall default in the timely payment of principal or interest on this Note when as the same shall become due and payable, whether at maturity, or by acceleration or otherwise;  or
>
> b.      Payor shall fail to perform or observe, in any material respect, any other material covenant, term, provision, condition, agreement or obligation under this Note, as may be amended from time to time.

(See Restated Promissory Note at §5, Exhibit C).

74.     The Restated Promissory Note further provided as follows:

> No failure or delay by [Plaintiff] in exercising any right, power or privilege under this Note shall operate as a waiver thereof nor shall any single or partial exercise of any right, power or privilege preclude any other or further exercise thereof or the exercise of any other right, power or privilege.  The rights and remedies herein provided shall be cumulative and not exclusive of any rights or remedies provided by law.  No course of dealing between the Payor and the Payee shall operate as a waiver of any rights by the Payee.

(See Restated Promissory Note at §3, Exhibit C).

75.     In addition, the Restated Promissory Note required JER, as Payor, to pay Plaintiff the following:

> any reasonable expenses (including reasonable legal fees, whether or not the Payee may act as her own attorney) arising out of or in connection with any action or proceeding ... taken to protect, enforce, determine or assert any right or remedy under this Note.  Such costs will be added to the balance of the principal.

(See Restated Promissory Note at §13, Exhibit C).

76.     Simultaneously with the execution of the Restated Promissory Note, JRosenberg, as "Guarantor," executed a written, personal guaranty dated as of January 1, 2009 (the "Guaranty") in favor of Plaintiff  as the "secured party," pursuant to which JRosenberg, as "primary obligor and not as a surety", "unconditionally, absolutely and irrevocably personally" guaranteed:

> the full and punctual payment of the full amount of the principal due pursuant to the Restated Promissory Note as and when the same shall in any manner be or become due, either according to the terms and conditions provided in the Restated Promissory Note or upon acceleration of the payment thereof by reason of a default (the "Guaranteed Obligation"), as a primary not a secondary liability of Guarantor.

(See Guaranty at §1, a true copy of which is annexed hereto and incorporated herein as Exhibit "D".)

77.     The Guaranty further provided that:

> . . . it is an absolute, unconditional, continuing guarantee of payment and not of collectability and is the primary obligation of the Guarantor.  In the event JER Receivables defaults in the repayment of the Principal, Guarantor's liability pursuant to this Guaranty shall be direct, immediate, absolute and continuing and shall not be subject to any counterclaim, recoupment, set off, reduction or defense and the Secured Party shall not be required to pursue any remedies which it may have against JER Receivables or proceed in the first instance against JER Receivables to collect any obligation pursuant to the Restated Promissory Note as a condition to the enforcement of this Guaranty.

(See Guaranty at §2, Exhibit "D".)

15

78.     Pursuant to the Guaranty, Plaintiff could elect in her "sole discretion and without affecting, impairing or releasing Guarantor's liability under this Guaranty" and without notice or consideration to:

> renew, waive, extend, change the time or terms for payment of the principal and/or interest under the Restated Promissory Note;  (b) modify, compromise, substitute, release or otherwise deal with in any manner satisfactory to the Secured Party any or all of the provisions of the Restated Promissory Note;  (c) delay to enforce any right, power, privilege or remedy conferred upon the Secured Party under this Guaranty or applicable laws;  (d) grant consents or indulgences or take action or omit to take action under, or in respect of, any or all of rights and/or obligations under the Restated Promissory Note and/or this Guaranty ... .

(See Guaranty at §3, Exhibit "D")

79.     The Guaranty also included an identical provision to that contained in the Restated Promissory Note relating to costs and fees incurred by Plaintiff arising out of any action or proceeding taken to enforce its terms.  (See Guaranty at §10, Exhibit "D").

**JER and JRosenberg Default**

80.     Between May 8, 2009 and continuing through January 22, 2010, JER paid Plaintiff ten (10) monthly interest payments by check mailed from JER's offices in Macedon, New York to Plaintiff's offices in Roseland, New Jersey in the following amounts which purportedly reflected the accounts collected as part of the Theta file:

| | |
|---|---|
| 5/8/2009 | $ 352.93 |
| 6/4/2009 | $ 387.86 |
| 7/2/2009 | $ 394.12 |
| 8/3/2009 | $ 264.79 |
| 8/28/2009 | $ 294.63 |
| 9/29/2009 | $ 312.07 |
| 10/23/2009 | $ 159.30 |
| 11/13/2009 | $ 231.84 |
| 12/23/2009 | $ 168.45 |
| 1/22/2010 | $ 246.91 |
| | |
| Total Paid: | $2,812.90 |

16

81.     When Plaintiff did not receive an interest payment in February 2010, she contacted JRosenberg to inquire about its status.

82.     In response, JRosenberg advised Plaintiff that the Theta collections were progressing slowly and, as a result, JER and JRosenberg had unilaterally decided to aggregate the interest payments in quarterly amounts for purposes of administrative efficiency.

83.     Notwithstanding JRosenberg's representation, JER made no further payments to Plaintiff pursuant to the Restated Promissory Note.

84.     As the March 1, 2010 maturity date approached, JRosenberg, individually and on behalf of JER, repeatedly promised and assured Plaintiff that she would be paid in full and that she had no reason to be concerned.

85.     Although JRosenberg continued to promise and assure Plaintiff that she would be paid in full, by e-mail dated February 13, 2010, JRosenberg informed her he would talk to her "this week" regarding "an idea" he had "for an investment which will guaranty" Plaintiff a "fantastic return which is being offered only to my mom from Bob and I will talk to you about maybe somehow amending your contract."

86.     Upon information and belief, the "Bob" to which JRosenberg was referring was Robert Feldman, a principal of IPI.

87.     Plaintiff replied that she did not want to extend her loan to JER nor loan any other money, but simply wanted to be paid what was owed to her by JER.

88.     Throughout March and April 2010, Plaintiff repeatedly inquired of JRosenberg when the Restated Promissory Note would be paid which was now past due.

89.     Although JRosenberg repeatedly promised that her payment was forthcoming, he offered varying excuses for JER's failure to abide by the terms of the Restated Promissory Note.

90.     For example, on March 24, 2010, JRosenberg represented to Plaintiff in writing that "we are waiting for funding and will get you out in full.  Deal was delayed ... but I told Richard [Schusterman] and Bob [Feldman] they need to get you out first."

91.     Similarly, on April 3, 2010, while JRosenberg told Plaintiff she was "number 1 on the list of [his] investors to get out in full" and that he had met with and notified IPI's principal, Richard Schusterman, "to buy [Plaintiff] out."

92.     Although JRosenberg continued to assure Plaintiff her payment was imminent, JRosenberg failed to provide her with a firm date by which such payment would be made despite her repeated requests.

93.     Accordingly, on May 4, 2010, Plaintiff reluctantly served JER and JRosenberg with a notice of default (the "Default Notice"), advising them, in relevant part, that based upon JER's failure to pay the Restated Promissory Note, JER was in default of same and the entire Principal amount and all accrued interest was due within five (5) days of receipt of such notice.

94.     In response, by e-mail that same day, JRosenberg asked whether Plaintiff was "calling the note," to which Plaintiff responded in the affirmative.  (A true copy of the Default Notice and JRosenberg's response thereto are attached hereto and incorporated herein by reference as Exhibit "E".)

95.     Notwithstanding the Default Notice, JER failed to make any further payment under the Restated Promissory Note.

96.     Instead, JRosenberg continued to promise Plaintiff that she would be paid imminently.  JRosenberg's representations included, but were not necessarily limited to, the following:

(a) An e-mail, dated May 10, 2010, in which he assured Plaintiff that she was "on the top 3 people to get paid. ... We anticipate getting out in the next 10 days."

(b) An e-mail, dated May 18, 2010, in which JRosenberg advised Plaintiff that "you are the absolute very next person on the list to get out. We need another week to do so. We are working as hard as we can and I will also give you the additional money promised."

(c) An e-mail, dated May 28, 2010, which Plaintiff received while in New York, in which JRosenberg advised Plaintiff that he "was pushing to complete it. Been very tight due to waiting for pension fund to close. ... It is imminent however and I will get you all of your funds."

(d) An e-mail, dated June 22, 2010, in which JRosenberg represented that he was "working on Theta with Richard and Bob like crazy. We are now closer than ever to buying you out"; and

(e) In another e-mail, dated that same day, representing that "Dean and Michael, my partners are waiting for a huge deal to close which will all the old JER investors will be paid off in full ... I expect this deal to close at the end of next week and Dean and Michael agreed to buy out your file.

97.     By e-mail, dated July 7, 2010, Plaintiff informed JRosenberg that her patience was at end and that if she was not fully paid by July 30, 2010 she would initiate legal action against JER and JRosenberg.

98.     JRosenberg continued to put off Plaintiff's demands for payment with fraudulent misstatements as to his and JER's actions to get Plaintiff paid including, *inter alia,* the following email dated July 11, 2010:

I spoke with Richard per Bob. He is planning on having your principal back the last week of July. The interest on Theta as well as the [under]age on the last deal will be paid sometime in August. Most likely around the third week.

**Breach Of The Settlement Agreement**

99.     Following extensive communications, on August 3, 2010 Plaintiff, JER and JRosenberg entered into an agreement (the "Settlement Agreement"), pursuant to which

JRosenberg personally agreed to refund Plaintiff's Principal and to pay to Plaintiff the sum of $50,000 (together with the Principal, the "Settlement Amount") in full satisfaction of the underage due from the prior loan, the interest due under the Restated Promissory Note and all other rights and remedies Plaintiff had against JER and JRosenberg pursuant to the Restated Promissory Note and Guaranty.  (A true copy of the Settlement Agreement is attached hereto and incorporated herein by reference as Exhibit "F.")

100.    According to the terms of the Settlement Agreement, JRosenberg represented and agreed, among other things, as follows:

> This is <u>my</u> absolute game plan:
> <u>I</u> will cut you a check for $10,000 tomorrow [August 4, 2010]
> <u>I</u> will pay you $90,000 between August 10th and the 15[th] [2010] ...
> <u>I</u> will pay you $80,000 by September 15[th] [2010]
> <u>I</u> will pay you $80,000 by October 15[th] [2010].

(<u>Id.</u>) (emphasis added).

101.    On or about August 4, 2010, JRosenberg provided Plaintiff with a JER check in the amount of $10,000 representing the first payment due pursuant to the Settlement Agreement.

102.    Thereafter, however, JER and JRosenberg failed to make any further payments due under the Settlement Agreement.

103.    Instead, by e-mail, dated September 21, 2010, to Plaintiff on which LRosenberg was copied, JRosenberg again appealed to their "friendship".  (A true copy of said e-mail is annexed hereto and incorporated herein by reference as Exhibit "G.")  JRosenberg claimed "I would never ever not pay you" and represented that because JRosenberg "and his mom" had insisted that IPI pay Plaintiff's entire funds,

> both my mom and myself ended up having a personal fight with Bob Feldman and the[n] in turn with Richard Schusterman.  Your friendship and importance to us to get your funds first over my own family's is what caused the dissolution of our friendship with Feldman.

> … I have always tried to put you in deals that we, ourselves, as a family, have our own skin in the game.  On top of that, we are going to bat for you way over us and I intend to get you paid no matter what.

(Id., Exhibit "G").

104.    In that same e-mail, JRosenberg further claimed that "no other JER investors received monies within the last two weeks." (Id).

105.    JRosenberg's representation regarding payments to other "JER investors" was directly contradicted by LRosenberg the following day, who informed Plaintiff that two other persons involved in Theta had been paid on September 15, 2010.

106.    However, what most shocked Plaintiff was the disclosure in JRosenberg's e-mail that he had "signed a Repurchase & Sale Agreement for [Plaintiff] approximately 4 to 5 weeks ago" with IPI (emphasis added) pursuant to which IPI was to pay JER the sum of $250,000, which JRosenberg pledged to "turn over to [Plaintiff] as the investor," in three monthly installments of $65,000 and a final installment of $55,000, commencing on September 15, 2010 and continuing through and including December 15, 2010, although IPI had the right to extend the date of any schedule payment by "120 days".  (Id).

107.    Alarmed that JRosenberg, without right or authority, had committed Plaintiff's money to a repurchase agreement (the "Repurchase Agreement") of which she had no knowledge and to a repayment schedule that extended the March 1, 2010 maturity date by potentially a full year, Plaintiff replied to JRosenberg by e-mail that same day that her payment was long overdue and that he had no authority to sign the Repurchase Agreement for her.  (A copy of the Repurchase Agreement is annexed hereto and incorporated herein as Exhibit "H".)

108.    JRosenberg's reply was internally contradictory; specifically by e-mail, dated September 24, 2010, he acknowledged his commitment under the Restated Promissory Note,

claimed that he had "NEVER committed [Plaintiff's] funds to any other deal" (emphasis in

original), and simultaneously attached a copy of the purported Repurchase Agreement.  (A true

copy of the e-mail is annexed hereto and incorporated herein as Exhibit "I.")

109.    The Repurchase Agreement confirmed that, contrary to the representations made

in the very email to which it was attached, JRosenberg had signed, without Plaintiff's knowledge

and without right or authority, the Repurchase Agreement as follows:

> JER Receivables, LLC/Seller
> [*signature Jonathan Rosenberg*]
> Jonathan Rosenberg, Managing Member
> For Lauren Topelsohn, Esq.

110.    The Repurchase Agreement also revealed that, once again, by way of that

agreement, JRosenberg and JER had attempted to cheat Plaintiff.

111.    Specifically, in his September 24, 2010 email JRosenberg represented that he

would "turn over to [Plaintiff] as the investor" the $250,000 repurchase price to be paid by IPI

for Plaintiff's percentage of the Theta file.  However, the Repurchase Agreement revealed that

the "repurchase price" was actually $270,000.  Thus it appears that JER and JRosenberg intended

to "pocket" the $20,000 difference.

112.    The foregoing conduct of JRosenberg and JER was in complete contravention of

Plaintiff's rights and constitutes, among other things, a violation of their fiduciary duties owed to

Plaintiff.

113.    To date, contrary to the repeated representations of JRosenberg and LRosenberg,

neither JRosenberg nor JER have made any further payments to Plaintiff in connection with the

Theta portfolio.

**Plaintiff's Employment Agreement and Cornerstore Magazine**

114.   As set forth above, in June 2002 the Rosenbergs offered Plaintiff a position as General Counsel for the Companies.

115.   The Rosenbergs' offer consisted of, among other things, (a) a fixed annual salary; (b) fifteen (15) paid vacation days each year; (c) five paid personal or sick days each year; and (d) that Rosenberg & Associates would provide Plaintiff with a car and automobile insurance since she did not own a vehicle.

116.   In addition, as part of the offer of employment, JRosenberg offered Plaintiff an equity interest in a new litigation-support service company that the Rosenbergs intended to form and which later became inFocus Litigation Support, Inc. ("inFocus").

117.   Plaintiff accepted the Rosenbergs' job offer in reliance upon, among other things, their promise to convey an equity interest in what later became inFocus.

118.   Thereafter, in September 2002, the Rosenbergs asked Plaintiff to form inFocus and to draft a pre-incorporation agreement for its future shareholders, but advised Plaintiff that, notwithstanding their prior promises, Plaintiff would not be given an equity interest in inFocus.

119.   Plaintiff was shocked and disappointed.  She advised the Rosenbergs that it had always been important to her to have a way to generate an income, that she had relied upon their promise of equity when accepting employment and, in accepting their offer of employment, had given up the full-time practice of law, thereby undermining her ability to develop and expand her legal practice.

120.   The Rosenbergs responded by assuring and promising Plaintiff that they would find another way to ensure that she "received a piece of the rock."

49216/0001-7623450v4

121.     Plaintiff relied upon the Rosenbergs' repeated promises that they would "make up" for the equity interest in inFocus that they had failed to give her but, by February 2004, as Plaintiff approached her 40th birthday, no formal proposal had been made.

122.     Accordingly, Plaintiff met with LRosenberg.  Plaintiff informed LRosenberg that she was concerned in the event that the Rosenbergs sold the Companies it would be difficult for an attorney with her seniority to obtain employment without portable business. Plaintiff explained that since she did not feel protected and no resolution had been reached regarding her "interest" in the Companies, she would need to separate from Rosenberg & Associates in order to attempt to resurrect her private practice.

123.     LRosenberg assured Plaintiff that she was sympathetic to Plaintiff's position, and did not want Plaintiff to resign.

124.     Thereafter, at the Rosenbergs' request, Plaintiff drafted a document that was intended to memorialize the terms of her employment.

125.     Plaintiff had some questions regarding the annual bonus calculation proposed by the Rosenbergs and consulted with S. Reid Kahn, Esq. ("Kahn"), an attorney with whom she had worked for nearly ten (10) years prior to her employment by Rosenberg & Associates.  Kahn advised her that he thought the formula was unnecessarily complicated and proposed an alternative, which Plaintiff then suggested to the Rosenbergs.

126.     Plaintiff and the Rosenbergs thereafter continued to discuss how best to memorialize the terms of her employment.

127.     In early April 2005, Plaintiff reminded the Rosenbergs that she was approaching another birthday and that they still had not formalized the terms of her employment.

24

128.     At a meeting, the Rosenbergs and Plaintiff reached a new agreement concerning the terms of her employment and, in early May 2005, at the Rosenbergs' request, Plaintiff drafted a document memorializing same.

129.     The agreement provided, among other things, for (a) an annual base salary; (b) an annual bonus calculated according to a formula specified by the Rosenbergs; (c) severance in the event Plaintiff's employment was terminated without "cause" (as defined in the document); and (d) a "Change of Control" bonus in a "lump sum…. equal to one percent (1%) of the gross amount paid" by a purchaser in the event the Companies, owned in whole or in part by either of the Rosenbergs, were sold.

130.     Plaintiff informed the Rosenbergs that the form of the document was acceptable to her and advised them that it was necessary that they have an independent attorney review it.

131.     Shortly thereafter, however, in June 2005, Plaintiff informed LRosenberg that her grandmother had been diagnosed with a terminal illness and that Plaintiff needed to reduce her hours at the offices of Rosenberg & Associates to care for her grandmother in New York.

132.     Accordingly, effective January 1, 2006, the terms of Plaintiff's employment with Rosenberg & Associates were orally modified as follows:  (a) Plaintiff's schedule was reduced to a three day work week; (b) Plaintiff accrued "compensation time" in half day increments such that if she performed more than three consecutive hours of services for the Companies outside her standard work-week, she was entitled to a half day of compensatory time and, if Plaintiff worked more than six hours, she would accrue a full compensatory day; (c) the number of paid vacation days per annum to which she was entitled was reduced from fifteen (15) to twelve (12); (d) the number of paid sick/personal days per annum were reduced from five to three; and (e) Plaintiff's annual salary was reduced to reflect her reduced work schedule.

133.    Thereafter, the parties continued to discuss how best to compensate Plaintiff in the event of a sale of the Companies.

134.    In August 2007, JRosenberg informed Plaintiff that the Rosenbergs had consulted with a business advisor, Jerry Ackerman ("Ackerman").  Based on Mr. Ackerman's advice, the Rosenbergs offered Plaintiff an option to purchase up to five (5%) of the Companies owned in whole or in part by the Rosenbergs.

135.    The option offered by the Rosenbergs to Plaintiff was to vest over a period of seven years and Plaintiff was to receive a credit of three years in acknowledgement of the fact that Rosenberg & Associates had first agreed three years earlier, in 2004, to compensate Plaintiff in the event of a sale.

136.    Between August 2007 and March 25, 2008 Plaintiff drafted several versions of a document embodying the Rosenbergs' option proposal and memorializing the terms of her employment agreement upon which they had previously agreed.

137.    On May 9, 2008 JRosenberg confirmed that the Rosenbergs agreed with all of the terms included in the March 25, 2008 version of the agreement, and that he had forwarded the option provision to a securities attorney for review.

138.    Approximately one week later, JRosenberg advised Plaintiff that based on the advice from their securities attorney, the Rosenbergs wanted to eliminate the option provision and instead pay Plaintiff a Change of Control bonus in certain fixed amounts that would increase over time.

139.    The Rosenbergs assured Plaintiff that this would be the final substantive change and that they were in agreement with respect to the remaining terms of Plaintiff's employment.

49216/0001-7623450v4

140.     Plaintiff thereafter eliminated the option provision and substituted in its place the Rosenbergs' Change of Control bonus proposal.

141.     Notwithstanding the absence of a fully integrated and signed document that embodied all of the terms of Plaintiff's employment, the parties conducted themselves according to the terms upon which agreement had been reached, which included (a) Plaintiff's modified work schedule and the accrual of "comp time"; (b) the 2006 reduction in Plaintiff's base salary; (c) the reduction of Plaintiff's vacation and sick or personal days; (d) an expense allowance; (e) an automobile that Rosenberg and Associates had secured for her in 2002; and (f) payment for Plaintiff's parking and automobile insurance.

142.     In addition, although the document that was intended to embody the terms of Plaintiff's employment underwent various revisions, each version included both a Change of Control bonus and severance provision.

143.     In reliance upon the Rosenbergs' repeated representations and assurances that they were in agreement with all of the material terms of Plaintiff's employment, and that they only needed to work out the details, on August 27, 2008 Plaintiff advised JRosenberg that:

> Well, in a nut shell, I am counting on you and your mom to come to a deal with me.  Your work takes up much more than 3 days of my week (but you probably know that).  So, in the spirit of our moving forward with Rosenberg & Associates, I am referring my non-Rosenberg & Associates legal work to Post Polak [Goodsell, MacNeill & Strauchler, P.A.].I just cant [sic] do everything anymore and I need to keep my clients in the event you sell or we don't reach an agreement, etc.  But I can't keep juggling.  So I approached them to see if they would catch the balls I toss in their direction in exchange for some referral fee.  ….It means that I get a small percentage of what comes my way and give up what would be a fee I wouldn't have to share with anyone.  But I'm trusting that you and your mom and get this thing done [sic].  I am going to spend tomorrow working on the agreement.
>
> Didn't mean to put it in an email (rather impersonal).  But I wanted you to know how serious I am about moving forward with you.

144.    JRosenberg's response, "Perfect.  And much appreciated!!!", further assured Plaintiff that the Rosenbergs intended to abide by their promises.

145.    Thereafter the parties continued to work together toward finalizing the remaining "details" of Plaintiff's employment.

146.    Specifically, on April 5, 2009, Rosenberg & Associates confirmed in writing its agreement that (a) in the event of Plaintiff's separation from Rosenberg & Associates without "cause", it would " pay [Plaintiff's] portion as well as the Company's portion [of COBRA] upon [such] termination for a period of 6 months;" (b) that beginning in January 1, 2010, Plaintiff would receive an annual raise "in a percentage equal to 2 points above the cost of living increase;" and (c) that Plaintiff would receive a year-end bonus equal to "1% of the incremental increase [in the Companies' grosses] from year-to-year with a floor of $3,500."

147.    On April 14, 2009, Plaintiff updated the document to reflect the terms included in the Rosenbergs' April 5, 2009 email, provided a copy same to the Rosenbergs and reminded them that it would be necessary for them to have independent counsel review the agreement.

148.    Plaintiff also reminded the Rosenbergs that her associate, Steve Harbace, Esq., had accepted a position with the Hudson County Prosecutor's Office and that, before she began to interview for his replacement, she wanted to ensure that she and the Rosenbergs were in agreement with respect to her employment.

149.    The Rosenbergs assured Plaintiff that they were in agreement with respect to the terms of Plaintiff's employment and instructed her to begin interviewing candidates, which she did.

150.    JRosenberg also suggested that they retain Kahn "to mediate" whatever details remained since the Rosenbergs and Plaintiff were in agreement with all material terms, Kahn

28

was familiar and friendly with both sides and thus retaining him would enable both Rosenberg & Associates and Plaintiff to save on attorneys' fees.

151.   Indeed, JRosenberg joked with Plaintiff that "Reid is likely to bend more in my favor because I have done so many favors" for him such as making "hundreds" of DVD copies of a movie that Kahn was promoting and allowing Kahn to use JRosenberg's time share in Mexico.

152.   Plaintiff agreed to JRosenberg's proposal, forwarded to Kahn the April 14, 2009 version of the document and began the process of interviewing for an assistant.

153.   By email, dated July 17, 2009, JRosenberg informed Plaintiff that he and LRosenberg had scheduled a conference call with Kahn to discuss the document the following Monday, July 20, 2009.

154.   That same week, on July 24, 2009, while away from the office, Plaintiff received an unexpected telephone call from Frederick Polak, Esq. ("Polak"), a member of Post, Polak, Goodsell, MacNeill & Strauchler, P. A., ("Post Polak") the law firm to which Plaintiff had referred her personal clients and which occupied offices on the same floor of the building in which Rosenberg & Associates is located.

155.   After exchanging salutations, Polak asked Plaintiff whether LRosenberg "was serious about this magazine."

156.   Plaintiff was surprised by the subject of Polak's call.  Although Plaintiff was aware that LRosenberg and her purported paramour, James "Bimmy" Antney ("Antney"), were attempting to publish a sexually provocative magazine entitled Cornerstore ("Cornerstore" or the "Magazine") that was to be distributed to male prisoners nationwide, other than having formed a limited liability company, Cornerstore Media, LLC ("CSM") in January 2009 and reviewed

29

revisions of CSM's Operating Agreement that had been drafted by Kahn's firm at LRosenberg's request, Plaintiff had performed no legal services relating to CSM or the Magazine and did not know what stage of development had been reached.

157.    As such, Plaintiff replied that she was not in the office that day, and was uncertain what she was permitted to disclose.  Plaintiff also inquired how Polak had come to hear about Cornerstore.

158.    Polak replied that he "was holding a copy of it in [his] hands" and that Antney had given it to the law firm's receptionist with a recommendation that it be placed on the table in the law firm's waiting area.  According to Polak, it had caused "quite a stir" among some of the law firm's female employees who found it offensive.

159.    Plaintiff apologized to Polak, assured him that, as far as she knew, it was not distributed as "a hand-out" and promised to telephone LRosenberg immediately.

160.    Plaintiff then telephoned LRosenberg and informed her of Polak's call. LRosenberg seemed unconcerned and said that she would speak to him directly herself.

161.    It was only after further inquiry that day that Plaintiff understood why Polak had telephoned her about the Magazine.  Specifically, Plaintiff discovered that she was identified on Cornerstore's masthead as its "General Counsel."

162.    Plaintiff was horrified that her name had been included without her knowledge or consent, and without any basis and, therefore, Plaintiff attempted to reach LRosenberg by telephone that same day but had no success.

163.    The following day Plaintiff spoke with LRosenberg by telephone, objected to the inclusion of her name in the Magazine and expressed her profound concern about the impact it would have on her professional reputation.

30

164.    LRosenberg assured Plaintiff that only five (5) copies had been handed out, that none had been mailed to subscribers, and agreed to remove Plaintiff's name from the masthead.

165.    Plaintiff was not convinced that LRosenberg had been completely honest with her.  Accordingly, by letter dated July 25, 2009 directed to LRosenberg and Antney, Plaintiff demanded that they

> cease and desist from circulating the Magazine in its current format. … I am not nor have I ever been "General Counsel" of [CSM], and your reference to my name is both defamatory and misleading.  I have devoted nearly twenty (20) years to developing my reputation and good will as an attorney, and my last name is unusually unique.  A "Google" search of my last name results in citations to me and five of my immediate relatives (specifically my parents, grandfather, brother and his wife whose first name is also Lauren).  I understand that the intended demographic distribution of the Magazine is to prisoners incarcerated throughout the United States.  The potential that anyone will associate me or my sister-in-law with the Magazine and that its subscribers may contact me or sister-in-law … has caused me significant distress.  Although Linda has confirmed that all references to my name will be removed, and that only five (5) volumes have circulated, in the event that any additional volumes of the Magazine are circulated prior to removal of my name, I will have no choice but to seek an injunction against Cornerstore and pursue a claim for any damages that may ensue.  In addition, I have consulted with my sister-in-law.  Her concerns are similar to those expressed herein and I am authorized to advise you that she will pursue all available remedies in the event that you do not abide by this demand.

> Finally, as I discussed with Linda, although she owns 99% of Rosenberg & Associates, I do not represent her personally but instead I represent Rosenberg & Associates.  Linda represented to me today that the Advertisement and the reference to Rosenberg & Associates as "publisher" will be removed.  That said, if they are not removed, I feel compelled to advise you as Rosenberg & Associates' General Counsel that I believe both the Advertisement and the credit is inconsistent with Rosenberg & Associates' corporate goals, will undermine its standing as a certified Woman's Own Business, and may damage its business reputation and income.

31

(A copy of the aforesaid July 25 2009 letter is annexed hereto and incorporated herein as Exhibit "J.")

166.    On Monday, July 26, 2009, upon returning to Rosenberg & Associates' offices, Plaintiff was informed that, contrary to LRosenberg's representations, Antney had distributed copies of Cornerstore to nearly every Rosenberg & Associates employee and numerous staff members of other offices located in the same building and that, although fifty (50) boxes containing copies of the Magazine had been delivered to Rosenberg & Associates' offices the prior week, only thirty-six (36) remained.

167.    Notwithstanding, LRosenberg continued to insist to Plaintiff that only five (5) copies of Cornerstone had been distributed and that the Magazine's printer was responsible for including Plaintiff's name in the publication.

168.    Plaintiff was also informed that Antney was displeased with her reaction, had accused her of "making trouble" and had referred to her as a "bitch."

169.    Based on the foregoing, Plaintiff concluded she had no alternative but to resign. Plaintiff, therefore, sent JRosenberg an e-mail, dated July 29, 2009, stating as follows:

> Jon:
>
> As you know I have tried to reach you several times in the last few days to discuss the situation here.  Since you are only familiar with some of the issues, I will summarize them for you.
>
> Although you mother represented to me that there were only five (5) copies of the Cornerstore Magazine distributed, I have since learned that Bimmy distributed copies to virtually everyone in this office, at least one employee at Post Polack and most likely anyone else in the building with whom he has contact.  In addition, I am advised that approximately 50 boxes containing copies of the magazine were delivered to this office, although there appears that only 36 remain.  This compels the conclusion that the copies contained in the other 14 boxes have been distributed.  Further, notwithstanding your mother's representation to me that the copies that are still on the premises will be destroyed, they have not been

32

and she will not grant me access to that office so that I may destroy them or even "hold them in escrow" pending her return to assure that there will be no further distribution.

We have reached a point where you mother does not hesitate to prevaricate to me.  When I discovered that my name had been included in the magazine without my permission or authority, she told me that "the printer" put it in and that she didn't know about it.  I do not know who the printer is, and certainly she or he wouldn't know me or know of me but for your mother. … It is statements such as these that have undermined my trust.

In addition, based on various events, I am concerned about my physical safety as a result of my employment by Rosenberg & Associates.  There was already one incident involving a knife during an argument which was only averted because the building superintendent, Eloi, intervened.  Further, Fred Pollak has advised me that one of his female employees has complained to him that she has been sexually harassed by a Cornerstore staff member.  In addition, I am advised that a former staff member of the magazine was recently shot five (5) times in the head and killed.  In addition, at least two of the magazine staff members have criminal records … Even you told me that one of the staff members brought in $5.00 and $20.00 bills to invest in the debt deal which, had you accepted, might have left you vulnerable to a criminal charge of money laundering.  Finally, it was repeated to me that Bimmy is not particularly happy with my reaction to the inclusion of my name in the magazine… .  According to the person who spoke to me about it, he referred to me as a "bitch" and that I was "making trouble."

In the meantime, we have … IT man[a]ger who blatantly insults me in emails on which you and your mom are copied… , my office remains completely unworkable and you mother was so impossible with the vendor yesterday that he hung up on her and would not take my call again, morale is non-existent, numerous employees have been terminated while others who perform little to no service remain, your mother refuses to delegate any authority, and nearly every male in this office feels free to be as disrespectful to me as possible if I ask for something to be done. The only matters that are more ignored than my requests for assistance (or office supplies or cooperation) are my recommendations to you and your mother in terms of legal and operating issues.  I have not slept in days, have injured my back and leg due to the configuration of my office, and no long[er] believe that there is anything I can do to protect the companies, you, your mother, the employees or even myself, whether as GC or COO. …

33

… Clearly this cannot continue.  Please call me to discuss an appropriate transition.

(A true and exact copy of the e-mail dated July 29, 2009 is annexed hereto and incorporated herein as Exhibit "K.")

170.    It was LRosenberg who responded to Plaintiff's email.  Specifically, she declined to accept Plaintiff's resignation and instead promised that (a) Plaintiff's name would be covered with an irremovable form of adhesive in those copies of the Magazine that had been produced but uncirculated, (b) Antney's colleague, Ed Woods, Esq., would serve as Cornerstore's General Counsel;  (c) any additional copies that were to be produced would not include Plaintiff's name; (d) Plaintiff's desk, which had been broken for approximately two (2) months, would be replaced;  (e) the raise to which  Plaintiff was entitled as of January 1, 2009 pursuant to the terms of her employment agreement, would be implemented retroactively and (f)  that the document embodying her employment agreement would be finalized and executed as soon as possible.

171.    Based on LRosenberg's prior representations concerning Cornerstore, Plaintiff was wary.  She proposed that since her right to receive the first $125,000 of the Change of Control bonus had already accrued pursuant to her employment agreement, and that Kahn had made no changes to the document with respect to that term, she would consider it a sign of "good faith" if LRosenberg would execute an agreement confirming her right to that portion of the bonus pending execution of a final, fully integrated document embodying all the terms of her employment agreement.

172.    LRosenberg agreed, and on August 7, 2009 she executed the requested document and Plaintiff rescinded her resignation.  (A true and exact copy of the document is annexed hereto and incorporated herein as Exhibit "L.")

34

173.    On or about May 20, 2010, following several telephone conferences between Plaintiff and Kahn, the parties reached an agreement on all of the material terms of her employment including those relating to (a) Plaintiff's base salary;  (b) the method by which her annual raise would be calculated; (c) Plaintiff's weekly work-schedule and the issue of "comp time"; (d) Rosenberg & Associates' obligation to provide Plaintiff with an automobile and automobile insurance during the term of her employment, her option to request a new vehicle "any time subsequent to June 2010 and thereafter once every five years", and the requirement that she return any such vehicle upon termination of her employment with Rosenberg & Associates; (e) the formula by which Plaintiff's year-end bonus would be calculated and the minimum amount she was entitled to receive; (f) the scheduled amount of the Change of Control bonus; (g) the definitions of for "cause" termination and resignation for "good reason;" (h) the amount of severance to be paid in the event Plaintiff was terminated without cause or resigned for "good reason;" and (i) Rosenberg & Associates' obligation to pay for six month's of COBRA premiums on Plaintiff's behalf in the event she was terminate without cause.

174.    On or about May 25, 2010 Kahn forwarded to Plaintiff a revised version of the document incorporating all the foregoing terms.  (A copy of that document (the "Employment Agreement") is annexed hereto and incorporated herein by reference as Exhibit "M.")

175.    Upon receipt and review, Plaintiff informed Kahn that her only changes were to (a) correct a typographical error in the document; (b) suggest that a duplicative paragraph be deleted; (c) suggest, in the interest of clarity, that the phrase "ceases to operate as a going business" be substituted with "is dissolved"; (d) suggest that the legal fees provision relating to a dispute under the Employment Agreement be eliminated; and (e) suggest that since the maximum severance amount to which she was entitled had essentially been reached, that the

35

provision be amended to reflect same.  Other than these proposed minor changes, Plaintiff informed him that the Employment Agreement was acceptable to her.

176.    On June 9, 2010, Kahn met with the Rosenbergs and, by email the following day, June 10, 2010, Kahn confirmed that LRosenberg had accepted the foregoing revisions.

177.    The following day, in response to Plaintiff's inquiry, LRosenberg confirmed that the Employment Agreement "was done," that she "didn't want to deal with any further changes" and  promised "to get copies" from Kahn for signature.

178.    However, because Kahn was then in Breckenridge, Colorado for the week for the purpose of promoting a client's film, he was unable to forward to Plaintiff a final version of the Employment Agreement until July 6, 2010, following the July 4, 2010 holiday weekend.

179.    According to Kahn's July 6, 2010 email by which he transmitted the Employment Agreement to Plaintiff, he reserved the right to make further changes only if necessary since this version of the document had not been reviewed by the Rosenbergs.

180.    Upon receipt of the Employment Agreement, Plaintiff told Kahn that it was acceptable to her and that she had no further modifications.

181.    The Rosenbergs did not request that Plaintiff agree to any further changes to the Employment Agreement and, upon information and belief, did not ask Kahn to make any further modifications.

182.    Whether LRosenberg abided by her promise to obtain copies of the Employment Agreement for execution is unknown for it was during this same period that JRosenberg was making numerous and meaningless promises to abide by the Restated Promissory Note which culminated in his breach of the Settlement Agreement.

36

**Plaintiff Files The Morris County Action Against JRosenberg And JER**

183.    In or about September 2010, based on JRosenberg's and JER's breaches of the terms of the Restated Promissory Note, the Guaranty and the Settlement Agreement, Plaintiff told LRosenberg that Plaintiff may have to commence litigation against JRosenberg and JER and requested assurance from LRosenberg that such litigation would have no negative consequences with regard to her employment with Rosenberg & Associates.

184.    In response, LRosenberg repeatedly and unequivocally assured Plaintiff that she would not terminate Plaintiff's employment in retaliation for Plaintiff suing JRosenberg and JER.

185.    Specifically in terms of Regency, a company managed by Rosenberg & Associates and which Plaintiff believes to be held in a trust controlled by LRosenberg for JRosenberg's benefit, LRosenberg instructed Plaintiff to continue to perform legal services for that company as well and assured Plaintiff that she was certain that JRosenberg would pay the money due to her soon and that everything would be resolved.

186.    On or about September 20, 2010, in a further effort to avoid having to sue JRosenberg and JER, Plaintiff telephoned Kahn to see if he would impress upon JRosenberg the benefit of abiding by the Settlement Agreement.

187.    Plaintiff informed Kahn that JRosenberg and JER had no defense to the breaches of the Restated Promissory Note and Guaranty, and that she was making the telephone call to avoid embarrassing JRosenberg.

188.    Kahn responded, in part, by stating that Plaintiff also wanted to save her job which Plaintiff would be "jeopardizing" if she were to proceed.

189.    Plaintiff replied that LRosenberg was fully aware of the situation and had promised Plaintiff she would not terminate her if Plaintiff were compelled to sue JRosenberg and JER.

190.    Kahn replied that he would speak with JRosenberg.

191.    On or about September 21, 2010, the day following her telephone call with Kahn, Plaintiff met with LRosenberg and again asked whether LRosenberg would "fire her" if she "had to sue Jon".

192.    LRosenberg replied "no, I never said that," and asked "who said that?"

193.    Plaintiff repeated the substance of her conversation with Kahn, including his remark that she "would be jeopardizing her job if she sued Jon."

194.    LRosenberg responded "I am absolutely 100% not going to fire you."

195.    On or about October 4, 2010 Plaintiff filed a Verified Complaint in the New Jersey Superior Court, Chancery Division, Morris County, for, inter alia, breaches of the Restated Promissory Note and Guaranty, naming JRosenberg and JER as defendants (the "Morris County Action").

196.    On or about November 22, 2010, while conducting research related to the Morris County Action, Plaintiff learned that on or about April 12, 2010, Bank of America, N.A. ("BoA") had commenced an action against the Rosenbergs, JER, Rosenberg & Associates, and Regency (hereinafter, the "BoA Action").

197.    According to the allegations in the BoA Action, JER, Rosenberg & Associates and Regency had borrowed $1,750,000 from BoA (the "BoA Loan") and had defaulted on repayment of the BoA Loan.

49216/0001-7623450v4

198.    The Complaint in the BoA Action further alleged that, as collateral for the BoA

Loan, each of the borrowers had assigned to BoA a first priority lien and security interest in their

respective accounts receivable and all other assets.

199.    The Complaint in the BoA Action further alleged that JRosenberg and

LRosenberg had personally guaranteed the repayment of the BoA Loans (the "BoA Guaranties").

200.    According to the BoA Complaint, the Borrowers had "breached the terms of a

loan agreement, were in default and that the Rosenbergs had failed to abide by the BoA

Guaranties.

201.    Based upon the information revealed in the BoA Complaint, Plaintiff learned that

twenty (20) days before JRosenberg belatedly disclosed to her in December 2009 that the

Jackson Hospital litigation had been settled and began pressuring her to "roll over" her $200,000

Principal into a new loan, JER, Rosenberg & Associates and Regency had borrowed $1,750,000

from BoA, pledged their assets as collateral, and that JRosenberg and LRosenberg had given

their personal guaranties to BoA for repayment of that amount.

202.    At no time had the Rosenbergs disclosed to Plaintiff the existence of the BoA

Loan, the security agreements or the BoA Guaranties notwithstanding her position as the

Companies' General Counsel.

203.    At all times, JRosenberg and JER intentionally, deceptively, and fraudulently

failed to disclose to Plaintiff the existence of the BoA Loan, the security agreements and the

BoA Guaranties in an effort to induce Plaintiff to enter into the Restated Promissory Note.

204.    Upon discovering the existence of the BoA Loan and corresponding security

agreements, Plaintiff concluded that the BoA Loan to JER, Rosenberg & Associates and

Regency, collectively, their cross-collateralization of the debt, and LRosenberg's personal

guaranty of same, potentially rendered RA, Regency and LRosenberg liable to Plaintiff for the claims she had asserted against JER and JRosenberg.

205.    Plaintiff immediately advised LRosenberg that such facts created a conflict of interest in terms of her position as General Counsel for Rosenberg & Associates, which prevented Plaintiff from continuing to represent the Companies without a written waiver of the conflict, and that she was ethically barred from performing legal services for the Companies until the conflict was resolved.

206.    At the direction of LRosenberg, Plaintiff drafted a form of conflict waiver, forwarded the document to LRosenberg on November 25, 2010 and advised the Rosenbergs that it should be reviewed by independent counsel.

207.    On December 24, 2010, pending resolution of the conflict issue, Plaintiff voluntarily filed a Notice of Dismissal, without prejudice, in the Morris County Action.

208.    The parties engaged in settlement discussions through on or about February 19, 2011, but no resolution was reached as to the conflict or the claims underlying the Morris County Action.

209.    On February 25, 2011, Rosenberg & Associates terminated Plaintiff's employment, without cause, effective that same day and, contrary to the Rosenbergs' representations and assurances, without notice, severance or other benefits.

## FIRST COUNT
## FRAUD AND NEGLIGENT MISREPRESENTATION
### (Against JRosenberg and JER)

210.    Plaintiff repeats and realleges all of the previous allegations contained in the Complaint as if same were fully set forth herein at length.

211. Based on JRosenberg's continuous pattern of deceit and misrepresentations, it is apparent that, from the inception of the parties' relationship, JRosenberg and JER intended to defraud Plaintiff and to convert her Principal in furtherance of their fraudulent scheme.

212. Individually and on behalf JER, JRosenberg falsely, knowingly, intentionally and maliciously misrepresented to Plaintiff, inter alia, that: (a) JER would pay Plaintiff interest at an annual rate of 30% in connection with the October 24, 2007 loan but, in fact, only paid interest in an amount equal to 18.95% pre annum; (b) after Plaintiff brought to JRosenberg's attention that she had been underpaid in connection with the October 24, 2007, that JER would pay her the sum due and owing when, in fact, JRosenberg never intended that JER pay the balance due and, in fact, JER did not; (c) Plaintiff's $200,000 Principal would be used to purchase Debt Instruments when, in fact, upon information and belief, JRosenberg and JER used Plaintiff's Principal for their own purposes, including the repayment of the BoA loan and the payment of Rosenberg & Associates' expenses; (d) Plaintiff would earn interest at a rate between 25-30% when, in fact, JRosenberg never intended to pay Plaintiff at that rate, declined to sign the initial version of the Restated Note and persuaded Plaintiff to agree to a rate of 15%; (e) said Defendants would repay Plaintiff's Principal and all interest accrued thereon, when instead, upon information and belief, JRosenberg intended to continue to persuade Plaintiff each time the Principal was due to "reinvest" same with JER to avoid such repayment; (f) JRosenberg and JER would ensure the security of Plaintiff's loan by, among other matters, reviewing the collection reports furnished by IPI relating to "Theta" when, in fact, upon information and belief, Defendants did not receive such reports or, if they did, failed to monitor same; (g) JER would make monthly and, thereafter, quarterly interest payments on the Theta portfolio since collections were purportedly proceeding slowly when, in fact, JER made no further interest

payments at all and, upon information and belief, JRosenberg and JER retained and utilized all monies collected for their own purposes and exclusive benefit; (h) IPI was obstructing the payment due to Plaintiff pursuant to the Restated Note when, in fact, upon information and belief, JRosenberg and JER had utilized Plaintiff's monies for their own purposes; (i) JRosenberg would personally guaranty the repayment of the Principal when, in fact, he never intended to abide by the terms of the Guaranty and has not; (j) Plaintiff's Principal under the Note would be paid by the "2nd week of January" when instead Defendants had already utilized Plaintiff's monies for their own purposes or were never in a position to refund her Principal and, in fact, attempted to enter into the Repurchase Agreement "for Plaintiff," without Plaintiff's knowledge and without right or authority and purported to sign the document, without authorization, on her behalf, in exchange for which, upon information and belief, JER was paid a substantial fee; (k) no other participants in Theta had been paid as of September 21, 2010 when, in fact, at least two participants had been paid; and (l) JRosenberg would pay Plaintiff the Settlement Amount pursuant to the schedule set forth in the Settlement Agreement when, in fact, he had no intention of doing so; and (m) despite requests from other non-parties, JRosenberg had never personally guaranteed any obligation of JER with the exception of his guaranty to Plaintiff.

213.     Said statements and representations were made by JRosenberg, individually and on behalf of JER, orally during conferences in Plaintiff's office and in JRosenberg's office, during telephone calls between the parties, and in writing by e-mail and "telephone text."

214.     But for JER and JRosenberg's fraudulent and/or negligent representations, as aforesaid, Plaintiff would not have entered into the Restated Promissory Note.

215.     In addition, JRosenberg, individually and on behalf of JER, maliciously, intentionally and fraudulently failed to disclose to Plaintiff that (a) JER, along with Regency and

49216/0001-7623450v4

Rosenberg & Associates, had pledged all of their assets as collateral for the BoA Loan during the same period that JRosenberg was pressuring Plaintiff to "rollover" her Principal into a new loan with JER;  (b) JRosenberg had personally guaranteed repayment of the BoA Loan approximately three weeks prior to entering into the Guaranty in favor Plaintiff as security for repayment of Plaintiff's Principal under the Restated Promissory Note;  (c) that JER had entered into the Purchase and Sale Agreement with IPI and did so only after JER and JRosenberg were in default of the terms of the Restated Promissory Note and Guaranty;  (d) JRosenberg had individually and on behalf of JER attempted to enter into the Repurchase Agreement with IPI on Plaintiff's behalf without right or authority;  and (e) the Jackson Hospital Litigation had settled in September 2009, and instead only informed her in December 2009 that it had settled after she inquired as to the status of the December 15, 2009 payment due under the Note.

216.    But for the intentional, deceptive, and fraudulent failure of JER and JRosenberg to disclose, among other matters, the existence and terms of the BoA Loan Agreement and JRosenberg's personal guaranty of its repayment, Plaintiff  would not have (a) agreed to forego her right to the repayment of her Principal due in January 2009, and entered into the Restated Promissory Note nor (b) relied upon JRosenberg's Guaranty in doing so; nor (c) agreed to extend the March 1, 2010 maturity date under the Restated Promissory Note.

217.    Moreover, even when JRosenberg ultimately disclosed the fact that he had entered into the Repurchase Agreement purportedly on her behalf, he told her that IPI had agreed to pay $250,000 for her share of the Theta portfolio when, in fact, IPI had agreed to a purchase price of $270,000.

218.    Indeed, it is particularly revealing that neither Rosenberg & Associates nor Regency requested Plaintiff, as their General Counsel, to review the BoA Loan Agreement or the

43

Security Agreements, nor did LRosenberg or JRosenberg request Plaintiff to review their personal guaranties to BoA, although Plaintiff generally performed all legal work required by LRosenberg, personal or otherwise, nor did defendants even advise Plaintiff of the action commenced by BoA.

219. Evidence of the seemingly limitless lengths to which JRosenberg and JER were willing to go in furtherance of their fraud is JRosenberg's Certification submitted in the Morris County Action in opposition to Plaintiff's Order to Show Cause in which JRosenberg falsely represented that he (a) refused to agree to sign the Restated Promissory Note (Rosenberg Cert. at ¶16); (b) refused to sign the Guaranty (id. at ¶17); (c) refused to agree to sign the original version of the Restated Promissory Note because Plaintiff had insisted on an outrageous interest rate of 30% (id. at ¶16), when, in fact, that was the rate of interest that JRosenberg had repeatedly promised; and (d) "that "[e]ach month JER distributes the prorated share [of monies collected] to its participants" (id. at ¶7), when, in fact, the last monthly payment Plaintiff received from JER was in January 2010 – nine months prior to the date of his Certification.

220. Upon information and belief, JRosenberg, JER, Regency, LRosenberg and Rosenberg & Associates have exhausted Plaintiff's money for their own purposes including, but not limited to, using those monies to repay the BoA Loan, Rosenberg & Associates' debts, and the personal debts of LRosenberg and JRosenberg.

221. Upon further information and belief, JER and JRosenberg, either directly or through IPI, have paid back some of the participants in the Theta portfolio on selective basis, including LRosenberg, while failing to pay Plaintiff her long over due monies.

222. Upon information and belief, JER and/or JRosenberg also have received funds from IPI on behalf of Plaintiff and have failed to remit same to her.

223.    Upon information and belief, at all times said defendants' true intentions were to use Plaintiff's Principal to pay the debt due to BoA, to pay JRosenberg unearned and substantial management fees, to support the Rosenbergs' lavish lifestyles, to pay the debts of LRosenberg including, but not limited to, the mortgage payments due with respect to her home in Florida purportedly valued at $10,000,000, and to pay other JER participants' principal investments or interest earned in order to feed said defendants' on-going fraudulent scheme and to delay for as long as possible by committing said defendants to payment schedules they never intended to abide by, or to avoid repayment of the Principal altogether by pressuring  Plaintiff to "rollover" same whenever it became due.

224.    JRosenberg, individually and on behalf of JER, knowingly, willfully and maliciously engaged in a pattern of intentional and/or negligent misrepresentations intended to convince Plaintiff that said defendants had "invested" her Principal, and were actively overseeing her loan to ensure its security and repayment, and the payment of the interest due thereon when, in fact, JRosenberg was, directly and through JER, pursuing his own interests, using Plaintiff's monies for defendants' benefit and, to the extent the Principal had ever been invested in the "Theta" file, misappropriating any amounts collected for defendants' own purposes.

225.    Plaintiff reasonably relied on said defendants' fraudulent and/or negligent misrepresentations and omissions by, among other things, turning over to defendants her Principal, agreeing to extend JER and JRosenberg's time to pay the monies due under the Restated Promissory Note and Guaranty, not initiating suit against said defendants immediately upon their default and by agreeing to the terms of the Settlement Agreement -- an agreement that

JRosenberg never intended to honor and which he proposed only in an effort to stave off litigation.

226.    The aforesaid intentional and/or negligent misrepresentations by said defendants were willful, wanton, malicious, and/or in reckless disregard of Plaintiff's rights.

227.    As a direct and proximate result of defendants' fraud and other wrongful conduct, Plaintiff has suffered extensive damages.

WHEREFORE, Plaintiff demands judgment against defendants Jonathan Eric Rosenberg and JER, jointly, severally and/or in the alternative, on this the First Count of the Complaint as follows:

A.    Damages;

B.    Punitive damages;

C.    Interest;

D.    Reasonable attorneys' fees;

E.    Costs of suit; and

F.    Such further relief as the Court deems just and equitable under the circumstances.

### SECOND COUNT
### FRAUDULENT OFFER AND SALE OF SECURITIES
### Violations of Section 12 of the Securities Act,
### 15 U.S.C. § 77l
### (Against JRosenberg and JER)

228.    Plaintiff repeats and realleges all of the previous allegations contained in the Complaint as if same were fully set forth herein at length.

229.    The Restated Promissory Note is an investment agreement pursuant to which Plaintiff was irrevocably assigned a 14.26072% interest in the Theta portfolio.

230.    The Note and Restated Promissory Note and/or Plaintiff's investment contracts and/or purchase agreements with JER directly, and/or with IPI through JER, constitute "securities" pursuant to 15 U.S.C. §77b(a)1.

231.    As set forth above, JER and JRosenberg raised capital for JER's business enterprise by the sale and issuance of securities through offerings made to the public at large.

232.    Specifically with respect to the Note, Restated Promissory Note and/or Plaintiff's investment contracts and/or purchase agreements, JER and JRosenberg offered and issued each such security to Plaintiff by way of a public offering.

233.    As set forth above, Plaintiff's interest and expectation in her investment was the profit each such Note, Restated Promissory Note and/or Plaintiff's investment contracts and/or purchase agreements were to generate.

234.    JER and JRosenberg, and each of them, by engaging in the conduct described above, offered and sold securities by use of the means or instruments of transportation or communication in interstate commerce or of the mails, by means of oral and written communications, which included untrue statements of material fact and omitted to state material facts necessary in order to make the statements not misleading, and Plaintiff did not know of such untruths and omissions.

235.    By engaging in the conduct described above, JER and JRosenberg violated, inter alia, Section 12 of the Securities Act, 15 U.S.C § 77l and as such, are jointly and severally liable to Plaintiff.

236.    The aforesaid conduct of JRosenberg and JER was willful, wanton, malicious and/or in reckless disregard of Plaintiff's rights.

WHEREFORE, Plaintiff demands judgment against defendants Jonathan Eric Rosenberg, and JER, jointly, severally and/or in the alternative, on this the Second Count of the Complaint as follows:

A.      Damages;

B.      Punitive damages;

C.      Interest;

D.      Reasonable attorneys' fees;

E.      Costs of suit; and

F.      Such further relief as the Court deems just and equitable under the circumstances.

### THIRD COUNT
### RICO Section 1962(a)
### Income Derived to Establish and Operate a RICO Enterprise
### (Against JRosenberg, LRosenberg, JER, Rosenberg & Associates, Regency and Johns Doe 1-10)

237.    Plaintiff repeats and realleges all of the previous allegations contained in the Complaint as if same were fully set forth herein at length.

238.    In addition to owning and controlling JER and Regency, JRosenberg is the Vice President of Rosenberg & Associates.

239.    In addition, LRosenberg owning 99% of Rosenberg & Associates and serving as its President and Treasurer, LRosenberg controls Regency through Rosenberg & Associates' management of Regency.

240.    Defendants JER, JRosenberg, Rosenberg & Associates, LRosenberg and Regency, comprise an association-in-fact which is an enterprise (the "Rosenberg Enterprise") within the meaning of 18 U.S.C. §§ 1961(4), which is engaged in, and which affects, interstate commerce by virtue of its interstate sale of securities, purchase, sale and collection, whether directly or indirectly, of unpaid medical receivables and with respect to Rosenberg & Associates

48

and Regency, the performance of court reporting services in actions pending throughout the United States and the production and sale of the resulting transcripts and, the interstate and international travel on behalf of the Rosenberg Enterprise.

241.     In furtherance of the fraudulent scheme, JRosenberg, LRosenberg, JER, Rosenberg & Associates, Regency and Johns Doe 1-10, intentionally and repeatedly caused letters, notices and other communications and matters to be delivered by the United States Postal Service to and from this district and elsewhere, in violation of 18 U.S.C. §§ 1341 (mail fraud). These mailings included, but were not limited to, checks drawn on JER's account and mailed to Plaintiff from Macedon, New York to Roseland, New Jersey that purportedly reflected interest accrued pursuant to the Note and Restated Promissory Note and year-end tax forms that purportedly reflected JER's debt obligation to Plaintiff.

242.     In furtherance of the fraudulent scheme of JRosenberg and LRosenberg, individually and on behalf JER, Rosenberg & Associates, Regency and the Rosenberg Enterprise, said defendants repeatedly made interstate telephone calls and transmitted emails through the use of Rosenberg & Associates' telephone and computer systems and equipment including, but not limited to, telephone calls and emails directed to IPI principals in Florida and Pennsylvania and to Plaintiff in New York and New Jersey, and other uses of interstate wire facilities to and from this district and elsewhere, in violation of 18 U.S.C. §§ 1343 (wire fraud) with the intention of defrauding Plaintiff.

243.     Each of the aforesaid violations by JRosenberg, LRosenberg, JER, Regency and Johns Doe 1-10 of the mail fraud and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343, constitutes an instance of racketeering activity as defined in 18 U.S.C. §§ 1961(1).

244.    The actions of the JRosenberg, LRosenberg, JER, Rosenberg & Associates, Regency and Johns Doe 1-10, as aforesaid, constitute racketeering under 18 U.S.C. §§1961 et seq.

245.    Upon information and belief, since at least as early as the 2007, JRosenberg , JER, LRosenberg, Rosenberg & Associates, Regency and/or Johns Doe 1-10 have engaged in an ongoing scheme to defraud Plaintiff, causing her substantial financial injury, and to profit thereby, and said Defendants have used the monies obtained from Plaintiff through such predicate acts and racketeering activities.

246.    JRosenberg, LRosenberg, JER, Rosenberg & Associates, Regency and/or Johns Doe 1-10 participated in the affairs of the Rosenberg Enterprise by performing functions necessary or helpful to the enterprise's operation and affairs, including the acts of racketeering within the meaning of 18 U.S.C. § 1961(1).

247.    The multiple acts of racketeering activity committed by JRosenberg, LRosenberg, JER, Rosenberg & Associates, Regency and Johns Doe 1-10 from October 2007 through February 2011 were interrelated, part of a common and continuous pattern of fraudulent acts, and perpetrated for the same or similar purposes, thus constituting, among other things, a pattern of racketeering activity as defined in 18 U.S.C. §1961(5).

248.    In violation of 18 U.S.C. § 2, JRosenberg, LRosenberg, JER, Rosenberg & Associates, Regency and Johns Doe 1-10 aided and abetted the violations of the RICO statute alleged herein as well as the primary acts of mail fraud and wire.

249.    Said defendants, and each of them, willfully, knowingly and intentionally participated in this scheme to defraud Plaintiff and in engaged in the pattern of racketeering activity described herein with the knowledge and intention that Plaintiff would be defrauded, that

50

the interstate mails and wires would be utilized in furtherance of the racketeering enterprises identified herein, in violation of 18 U.S.C. §§ 1341 and 1343, and with knowledge that such fraud and illegal utilization of the interstate mails and wires was essential to further the fraudulent scheme.

250.    JRosenberg, LRosenberg, JER, Rosenberg & Associates, Regency and/or Johns Doe 1-10 have received monies derived, directly or indirectly, from the foregoing pattern of racketeering activity and have used or invested, directly or indirectly, revenues derived from such activities to set up a network of affiliates or subsidiaries to sustain and expand the fraudulent activity of the Rosenberg Enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce, in violation of 18 U.S.C. §§ 1962(a).

251.    As a direct and proximate result of said defendants' wrongful racketeering acts, Plaintiff has been injured and has sustained substantial damages, and Plaintiff also is entitled to treble damages, reasonable attorneys' fees and costs pursuant to 18 U.S.C. § 1964(c).

252.    The aforesaid conduct of JRosenberg, LRosenberg, JER, Rosenberg & Associates, Regency and Johns Doe 1-10 was willful, wanton, malicious and/or in reckless disregard of Plaintiff's rights.

WHEREFORE, Plaintiff demands judgment against Jonathan Eric Rosenberg, Linda Rosenberg, JER, Rosenberg & Associates, Regency and Johns Doe 1-10 jointly, severally and/or in the alternative, on this the Third Count of the Complaint as follows:

A.    Damages;

B.    Punitive damages;

C.    Treble damages;

D.    Interest;

E.      Reasonable attorneys' fees;

F.      Costs of suit; and

G.      Such further relief as the Court deems just and equitable under the circumstances.

**FOURTH COUNT**
**RICO Section 1962(c)**
**(Against JRosenberg, LRosenberg, JER, Rosenberg & Associates,**
**Regency and Johns Doe 1-10)**

253.    Plaintiff repeats and realleges all of the previous allegations contained in the Complaint as if same were fully set forth herein at length.

254.    JER, Rosenberg & Associates and Regency are each an "enterprise" as that term is defined in 18 U.S.C. § 1961 (4).

255.    JRosenberg, LRosenberg, JER, Rosenberg & Associates, Regency and Johns Doe 1-10 are all separate and distinct persons as that term is defined in 18 U.S.C. § 1961 (3).

256.    JRosenberg, LRosenberg and/or Johns Doe 1-10 are each employed by or associated with JER, Rosenberg & Associates and Regency and the business of each such enterprise affects interstate commerce.

257.    JRosenberg, LRosenberg, JER, Rosenberg & Associates, Regency and/or Johns Doe 1-10 have conducted or participated in, directly or indirectly, in the affairs of the Rosenberg Enterprise through a continuous pattern of racketeering activity in violation of, among other things, 18 U.S.C. §§ 1962(c).

258.    As a direct and proximate result of the wrongful racketeering acts of JRosenberg, LRosenberg, JER, Rosenberg & Associates, Regency and/or Johns Doe 1-10, Plaintiff has been injured in her business and property, has sustained substantial damages and is entitled to recover treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

259.    The aforesaid conduct of JRosenberg, LRosenberg, JER, Rosenberg & Associates, Regency and/or Johns Doe 1-10 was willful, wanton, malicious and/or in reckless disregard of Plaintiff's rights.

WHEREFORE, Plaintiff demands judgment against Jonathan Eric Rosenberg, Linda Rosenberg, JER, Rosenberg & Associates, Regency and Johns Doe 1-10, jointly, severally and/or in the alternative, on this the Fourth Count of the Complaint as follows:

A.    Damages;

B.    Punitive damages;

C.    Treble damages;

D.    Interest;

E.    Reasonable attorneys' fees;

F.    Costs of suit; and

G.    Such further relief as the Court deems just and equitable under the circumstances.

**FIFTH COUNT**
**RICO Section 1962(d)**
**(Against JRosenberg, LRosenberg, JER, Rosenberg & Associates,**
**Regency and/or Johns Doe 1-10)**

260.    Plaintiff repeats and realleges all of the previous allegations contained in the Complaint as if same were fully set forth herein at length.

261.    Upon information and belief, in violation of, among other things, 18 U.S.C. §§1962(d), JRosenberg, LRosenberg, JER, Rosenberg & Associates, Regency and/or Johns Doe 1-10 conspired with each other to receive income, directly or indirectly, from the foregoing pattern of racketeering activity and to use or invest part of that income in the establishment and operation of the Rosenberg Enterprise in violation of 18 U.S.C. §§ 1962(a), and one or more of them committed numerous overt acts in furtherance of their conspiracy.

49216/0001-7623450v4

262.     Upon further information and belief, in violation of, among other things, 18 U.S.C. §§1962(d), JRosenberg, LRosenberg, JER, Rosenberg & Associates, Regency and/or Johns Doe 1-10 conspired with each other to conduct or participate in, directly or indirectly, the affairs of the Rosenberg Enterprise through a pattern of racketeering activity in violation of 18 U.S.C. §§ 1962(c), and one or more of them committed numerous overt acts in furtherance of their conspiracy.

263.     As a direct and proximate result of said defendants' conspiracy, Plaintiff has been injured in her business and property, has sustained substantial damages and is entitled to recover treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. §§ 1964(c).

264.     The aforesaid conduct of JRosenberg, LRosenberg, JER, Rosenberg & Associates, Regency and Johns Doe 1-10, was willful, wanton, malicious and/or in reckless disregard of Plaintiff's rights.

WHEREFORE, Plaintiff demands judgment against Defendants Jonathan Eric Rosenberg, Linda Rosenberg, JER, Rosenberg & Associates, Regency and/or Johns Doe 1-10, jointly, severally and/or in the alternative, on this the Fifth Count of the Complaint as follows:

A.     Damages;

B.     Punitive damages;

C.     Treble damages;

D.     Interest;

E.     Reasonable attorneys' fees;

F.     Costs of suit; and

G.     Such further relief as the Court deems just and equitable under the circumstances.

54

### SIXTH COUNT
### CEPA AND PIERCE CLAIMS
### (As against JRosenberg, LRosenberg and Rosenberg & Associates)

265.    Plaintiff repeats and realleges all of the previous allegations contained in the Complaint as if same were fully set forth herein at length.

266.    Plaintiff disclosed to a supervisor, threatened to disclose and/or to engage in conduct that would result in the disclosure to a public body, activities, policies and/or practices that she reasonably believed to be in violation of a law, rule or regulation promulgated pursuant to law.

267.    Plaintiff objected to and/or refused to participate in activities, policies and/or practices that she reasonably believed was in violation of a law, rule or regulation promulgated pursuant to law, which was fraudulent and/or criminal and/or incompatible with a clear mandate of public policy.

268.    The activities, policies and/or practices that Plaintiff reasonably believed to be in violation of a law, rule or regulation promulgated pursuant to law include, but are not limited to, (a) requiring Plaintiff to perform legal work despite an ethical conflict (b) accepting a waiver of conflict executed by LRosenberg on behalf of Rosenberg & Associates  that had been drafted by an attorney that did not represent that company, but instead represented JRosenberg and JER, (c) JER and JRosenberg's activities which appeared may be a Ponzi scheme that was supported and promoted by LRosenberg and the Companies, (d) JRosenberg and JER's solicitation of Rosenberg & Associates' employees who were under economic distress and fearful for the security of their employment, with the knowledge and direct assistance of LRosenberg and Rosenberg & Associates, (e) JRosenberg's apparent forgery of the signature of a Rosenberg & Associates' employee to an employment agreement,  (f) the inclusion of persons on Rosenberg & Associates' payroll who performed no services for the company and providing health insurance

55

coverage for such persons although they were ineligible for such coverage, and (g) the misclassification of employees and other payroll irregularities that enabled Rosenberg & Associates to avoid paying its employees overtime.

269.    As a direct and proximate result thereof, Plaintiff's employment was wrongfully terminated from Rosenberg & Associates without notice or cause and in violation of clear mandates of public policy.

270.    The aforesaid conduct of Rosenberg & Associates, JRosenberg and LRosenberg constitutes, inter alia, violations of CEPA and the common law.

271.    The aforesaid conduct has caused Plaintiff to suffer substantial damages including physical injury, severe emotional distress and mental anguish.

272.    The conduct of said defendants was willful, wanton, malicious and/or in reckless disregard of Plaintiff's rights.

WHEREFORE, Plaintiff demands judgment against Defendants Jonathan Eric Rosenberg, Linda Rosenberg and Rosenberg & Associates, jointly, severally and/or in the alternative on this the Sixth Count of the Complaint as follows:

A.    Damages;

B.    Punitive damages;

C.    Interest;

D.    Reasonable attorneys' fees;

E.    All benefits and perquisites of employment;

F.    Reinstatement;

G.    Penalties and/or a Civil Fine;

H.    Costs of suit; and

I.      Such further relief as the Court deems just and equitable under the circumstances.

## SEVENTH COUNT
## BREACH OF CONTRACT (FIRST TRANSACTION)
### (As against JER and JRosenberg)

273.    Plaintiff repeats and realleges all of the previous allegations contained in the Complaint as if same were fully set forth herein at length.

274.    As set forth above, Plaintiff was eventually repaid her principal of $50,000 with respect to the first transaction she entered with JER.

275.    However, the rate of return received by Plaintiff was 18.95% rather than the 30% that JRosenberg, individually and on behalf of JER, had promised.

276.    Plaintiff advised JRosenberg of this shortfall, and he reaffirmed in writing, individually and on behalf of JER, that Plaintiff would receive the unpaid portion of the full rate of return that had been promised, representing approximately $8,750.

277.    To date, despite JRosenberg's repeated representations, neither JER nor JRosenberg has paid Plaintiff any portion of the $8,750 shortfall.

WHEREFORE, Plaintiff demands judgment against defendants Jonathan Eric Rosenberg and JER, jointly, severally and/or in the alternative, on this the Seventh Count of the Complaint as follows:

A.      Damages;

B.      Interest;

C.      Reasonable attorneys' fees;

D.      Costs of suit; and

E.      Such further relief as the Court deems just and equitable under the circumstances.

49216/0001-7623450v4

## EIGHTH COUNT
## BREACH OF THE RESTATED PROMISSORY NOTE
### (As against JER)

278.     Plaintiff repeats and realleges all of the previous allegations contained in the Complaint as if same were fully set forth herein at length.

279.     JER breached the terms of the Restated Promissory Note by, among other things, failing to return to Plaintiff the Principal with the accrued interest due on March 1, 2010.

280.     Plaintiff performed all obligations required of her pursuant to the terms of the Restated Promissory Note.

281.     As a direct and proximate result of JER's breach of the Restated Promissory Note, JER is liable to Plaintiff for damages representing the Principal with accrued interest thereon in the amount of 15% from January 1, 2009, less any interest paid to date, with all costs and expenses incurred by Plaintiff as result of such breach including, but not limited to, reasonable attorneys' fees in accordance §13 of the Restated Promissory Note.

WHEREFORE, Plaintiff demands judgment against defendant JER on this the Eighth Count of the Complaint as follows:

A.     Damages;

B.     Interest;

C.     Reasonable attorneys' fees;

D.     Costs of suit; and

E.     Such further relief as the Court deems just and equitable under the circumstances.

## NINTH COUNT
## BREACH OF GUARANTY
### (As against JRosenberg)

282.     Plaintiff repeats and realleges all of the previous allegations contained in the Complaint as if same were fully set forth herein at length.

58

283.    JRosenberg has failed and refused to abide by the terms of the Guaranty and return Plaintiff's $200,000 Principal, despite demand therefor.

284.    As a result of JRosenberg's breach of the Guaranty, JRosenberg is indebted to Plaintiff in the amount of $200,000, representing the unpaid Principal, with accrued interest thereon and all costs and expenses incurred by Plaintiff as result of said breach, including reasonable attorneys' fees in accordance with §10 of the Guaranty.

WHEREFORE, Plaintiff demands judgment against defendant Jonathan Eric Rosenberg on this the Ninth Count of the Complaint as follows:

A.    Damages;

B.    Interest;

C.    Reasonable attorneys' fees;

D.    Costs of suit; and

E.    Such further relief as the Court deems just and equitable under the circumstances.

### TENTH COUNT
### BREACH OF THE SETTLEMENT AGREEMENT
### (As against JRosenberg and JER)

285.    Plaintiff repeats and realleges all of the previous allegations contained in the Complaint as if same were fully set forth herein at length.

286.    As a result of JRosenberg and JER's breach of the Settlement Agreement, said Defendants owe the Settlement Amount.

287.    Said Defendants have failed and refused to abide by the terms of the Settlement Agreement despite Plaintiff's demand therefor.

288.    As a direct and proximate result of said Defendants' breach of the Settlement Agreement, JRosenberg and JER are jointly and severally liable to Plaintiff in the amount of

$250,000, with interest thereon, and all costs and expenses incurred by Plaintiff as result of said breach, including reasonable attorneys' fees.

WHEREFORE, Plaintiff demands judgment against Jonathan Eric Rosenberg and JER, jointly, severally and/or in the alternative, on this the Tenth Count of the Complaint as follows:

A.      Damages;

B.      Interest;

C.      Reasonable attorneys' fees;

D.      Costs of suit; and

E.      Such further relief as the Court deems just and equitable under the circumstances.

### ELEVENTH COUNT
### BREACH OF EXPRESS
### WRITTEN EMPLOYMENT AGREEMENT
### (As against Rosenberg & Associates)

289.    Plaintiff repeats and realleges all of the previous allegations contained in the Complaint as if same were fully set forth herein at length.

290.    On or about July 6, 2010, independent counsel for Rosenberg & Associates sent Plaintiff a form of contract memorializing the final terms of the Employment Agreement, and Plaintiff confirmed to counsel for Rosenberg & Associates and to LRosenberg that the contract was acceptable to her.

291.    At no time thereafter did anyone on behalf of Rosenberg & Associates request that Plaintiff agree to any changes to the Employment Agreement or express any disagreement with any of the terms of the Employment Agreement.

292.    The parties continued to conduct themselves pursuant to the terms of the Employment Agreement throughout the remaining term of Plaintiff's employment.

60

293.    Plaintiff commenced the Morris County Action against JRosenberg and JER in reliance upon LRosenberg's repeated assurances that Plaintiff's employment with Rosenberg & Associates would not be terminated if she did so.

294.    On or about November 22, 2010, Plaintiff learned of the BoA Action in which LRosenberg, JRosenberg, JER, Rosenberg & Associates and Regency were named as defendants.

295.    Upon discovering the existence of the BoA Loan, the Security Agreements and the BoA Guaranties, Plaintiff concluded that Rosenberg & Associates' and Regency's agreement to borrow money jointly with JER, their cross-collaterization of the debt, and LRosenberg's personal guaranty of same, potentially rendered Rosenberg & Associates, Regency and LRosenberg financially exposed in connection with Plaintiff's claims against JER and JRosenberg and advised LRosenberg that such facts created a conflict of interest in terms of her position as General Counsel for the Companies.

296.    LRosenberg and JRosenberg, on behalf of Rosenberg & Associates and the Companies declined to waive the conflict.

297.    On February 25, 2011, Rosenberg & Associates terminated Plaintiff's employment, without cause, effective that same day.

298.    To date, despite demand therefor, Rosenberg & Associates has failed to pay Plaintiff the severance, benefits and other perquisites of employment to which she is entitled pursuant to the terms of the Employment Agreement.

WHEREFORE, Plaintiff demands judgment against defendant Rosenberg & Associates on this the Eleventh Count of the Complaint as follows:

A.      Damages;

B.      Interest;

C.      Reasonable attorneys' fees;

D.      All benefits and perquisites of employment;

E.      An accounting of all sums due under the Employment Agreement;

F.      Costs of suit; and

G.      Such further relief as the Court deems just and equitable under the circumstances.

## TWELFTH COUNT
## BREACH OF EXPRESS ORAL EMPLOYMENT CONTRACT
### (As against Rosenberg & Associates)

299.    Plaintiff repeats and realleges all of the previous allegations contained in the Complaint as if same were fully set forth herein at length.

300.    In several conversations with Plaintiff, LRosenberg expressly stated and represented that the terms of the written Employment Agreement were acceptable to her.

301.    LRosenberg's statement to Plaintiff gave rise to an oral contract of employment, the terms of which are memorialized in the unsigned Employment Agreement.

302.    By failing and refusing to pay severance, benefits and the other perquisites of employment due Plaintiff in accordance with the terms of the oral Employment Agreement, Rosenberg & Associates has breached same.

303.    As a direct and proximate result thereof, Plaintiff has suffered substantial damages.

WHEREFORE, Plaintiff demands judgment against defendant Rosenberg & Associates on this the Twelfth Count of the Complaint as follows:

A.      Damages;

B.      Interest;

C.      Reasonable attorneys' fees;

D.      All benefits and perquisites of employment;

E.      An accounting of all sums due under the Employment Agreement;

F.      Costs of suit; and

G.      Such further relief as the Court deems just and equitable under the circumstances.

### THIRTEENTH COUNT
### BREACH OF IMPLIED EMPLOYMENT CONTRACT
### (As against Rosenberg & Associates)

304.    Plaintiff repeats and realleges all of the previous allegations contained in the Complaint as if same were fully set forth herein at length.

305.    By conducting their employer-employee relationship in accordance with the terms of the unsigned Employment Agreement, the parties entered into an implied contract or employment, the precise terms of which are set forth in the unsigned written agreement.

306.    By failing and refusing to pay severance to Plaintiff in accordance with the terms of the implied employment contract, Rosenberg & Associates breached the implied employment agreement.

307.    As a direct result thereof, Plaintiff has been damaged.

WHEREFORE, Plaintiff demands judgment against defendant Rosenberg & Associates on this the Thirteenth Count of the Complaint as follows:

A.      Damages;

B.      Interest;

C.      Reasonable attorneys' fees;

D.      All benefits and perquisites of employment;

E.      An accounting of all sums due under the Employment Agreement;

F.      Costs of suit; and

G.      Such further relief as the Court deems just and equitable under the circumstances.

49216/0001-7623450v4

## FOURTEENTH COUNT
### (Violations of New Jersey Wage and Hour Law)
### (As against Rosenberg & Associates)

308.     Plaintiff repeats and realleges all of the previous allegations contained in the Complaint as if same were fully set forth herein at length.

309.     At the time that Rosenberg & Associates terminated her employment, Plaintiff had worked forty (40) days at LRosenberg's specific request for which Plaintiff  has not been paid.

310.     Rosenberg & Associates has failed to Plaintiff for her services despite demand therefor.

311.     Accordingly, Plaintiff is due and owing unpaid wages in the approximate amount of $50,000.

312.     In violation of, inter alia, N.J.S.A. 34:11-4.8, Rosenberg & Associates has failed to pay to Plaintiff, without condition and within the time set by the Act, all wages, or parts thereof, conceded by it to be due.

313.     As a direct and proximate result thereof, Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands judgment against defendant Rosenberg & Associates on this the Fourteenth Count of the Complaint as follows:

A.     Damages;

B.     Interest;

C.     Reasonable attorneys' fees;

D.     Costs of suit; and

E.     Such further relief as the Court deems just and equitable under the circumstances.

## FIFTEENTH COUNT
### BREACHES OF FIDUCIARY DUTY
### (As Against JRosenberg and JER)

64

314.     Plaintiff repeats and realleges all of the previous allegations contained in the Complaint as if same were fully set forth herein at length.

315.     As set forth above, JRosenberg, directly and through JER, among other things, solicited Plaintiff to loan money to JER and to reinvest her Principal pursuant to the terms of the Restated Promissory Note, assured Plaintiff that her loan was secure and that her Principal would be returned, and repeatedly represented to her that at all times he had her best interests in mind.

316.     From the time Plaintiff entered into the Note with JER, JRosenberg and JER had control over Plaintiff's assets, and occupied a superior position over their use.

317.     JRosenberg and JER held themselves out as providing superlative client investment services, secure investment opportunities, consistent and substantial profits for their investors, and represented that they would protect Plaintiff, thereby evincing an understanding that they owed a fiduciary duty to Plaintiff.

318.     To the extent that JRosenberg and JER used Plaintiff's Principal to purchase Debt Instruments as part of the Theta file, as said defendants claim to have done, they were in a superior position to Plaintiff with respect to the management and control of such loan, and had superior access to confidential information about the loan and IPI.

319.     JRosenberg's and JER's representations and superior position required that Plaintiff repose her trust and confidence in said defendants to fulfill their duties, and Plaintiff did so by loaning money to them and entrusting said defendants to act in her best interests with respect to her loan.

320.     Although bound by an obligation of good faith to Plaintiff, in order to further their own ends,  JRosenberg and JER failed and refused to pay Plaintiff the monies due pursuant to the terms of the Restated Promissory Note, the Guaranty and the Settlement Agreement and have,

65

upon information and belief, used Plaintiff's Principal for their own purposes including, but not limited to, paying JRosenberg's personal expenses, the loan due to BoA, and JER's earlier participants in an effort avoid raising suspicion regarding their on-going fraudulent scheme.

321.    In addition, to the extent the Plaintiff's Principal was invested with IPI as part of the Theta debt portfolio, JER and JRosenberg breached their fiduciary duties to Plaintiff by, <u>inter alia</u>, failing to conduct adequate due diligence and failing to monitor such loan, and yet simultaneously paying themselves handsome asset management fees.

322.    In the event the Repurchase Agreement between JER and IPI is a true and valid contract between those two entities that JRosenberg purportedly executed on Plaintiff's behalf, JRosenberg and JER further breached their fiduciary duty to Plaintiff inasmuch as said defendants did so without Plaintiff's knowledge, without any right or authority, the payment terms of such agreement are contrary to the express terms of the Restated Promissory Note, the Settlement Agreement and defendants' repeated representations to Plaintiff regarding payment of the Settlement Amount.

323.    By reason of the aforesaid breaches of fiduciary duty by JRosenberg and JER, Plaintiff is unable to ascertain whether said defendants have depleted her entire Principal, whether any portion of same remains in said defendants' possession, custody or control, and what monies JRosenberg and/or JER received that represent Plaintiff's interest in the Debt Instruments collected as part of the Theta portfolio, if any.

324.    As a direct and proximate result of the aforesaid breaches of fiduciary duty, Plaintiff has suffered substantial damages.

325.    The aforesaid conduct of JRosenberg and JER were willful, wanton, malicious and/or in reckless disregard of Plaintiff's rights.

WHEREFORE, Plaintiff demands judgment against Jonathan Eric Rosenberg and JER, jointly, severally and/or in the alternative, on this the Fifteenth Count of the Complaint as follows:

A.      Damages;

B.      Punitive damages;

C.      Interest;

D.      Reasonable attorneys' fees;

E       Costs of suit; and

F       Such further relief as the Court deems just and equitable under the circumstances.

## SIXTEENTH COUNT
### (THIRD PARTY BENEFICIARY/(DECLARATORY JUDGMENT)
#### (As Against JRosenberg, JER and IPI)

326.    Plaintiff repeats and realleges all of the previous allegations contained in the Complaint as if same were fully set forth herein at length.

327.    Upon information and belief, on or about February 1, 2009, JER and IPI entered into a written agreement Purchase and Sale Agreement (the "Purchase Agreement") pursuant to which IPI sold to JER the medical debt portfolio referred to as Theta for the aggregate sum of $1,402,453.70.

328.    Upon information and belief, Theta consisted of uncollected and charged-off accounts having an aggregate unpaid balance of $12,749,579.09.

329.    At all times, the Restated Promissory Note was an investment agreement pursuant to which Plaintiff was irrevocably assigned a 14.26072% interest in the Theta portfolio.

67

330.     On or about August 22, 2010, JER and IPI entered into the Repurchase Agreement wherein IPI repurchased a portion of Theta which IPI previously sold to JER in the Purchase Agreement.

331.     Specifically, JER sold back to IPI 14.25072% of Theta for $270,000.

332.     The Repurchase Agreement was signed on behalf of  "JER Receivables, LLC/Seller [by] JRosenberg . . . For Lauren Topelson, Esq.," without Plaintiff's knowledge and without right or authority.

333.     Based on the foregoing, at all times, Plaintiff was an intended third-party beneficiary of the Repurchase Agreement.

334.     Upon sale of the Theta portfolio pursuant to the Repurchase Agreement, at all times JER and/or IPI held Plaintiff's 14.26072% interest therein in trust for the benefit of Plaintiff.

335.     Upon information and belief, subsequent to the date of the Purchase Agreement and Repurchase Agreement, certain accounts included therein were collected and paid to JER or IPI on behalf of Plaintiff (the "Collected Accounts").

336.     To date, Plaintiff has received only $2,812.90 of the payments received with respect to the Collected Accounts although, upon information and belief, the aggregate sum collected on Plaintiff's behalf far exceeds said amount.

337.     As a result, Plaintiff requests a judgment declaring that she is a third party beneficiary of the Repurchase Agreement between IPI and JER and entitled to all monies derived based upon her 14.26072% interest therein and well as all fees paid by IPI to JER and/or JRosenberg based on JER's purported management of same.

68

WHEREFORE, Plaintiff demands judgment against defendants Jonathan Eric Rosenberg, JER, and IPI, jointly, severally and/or in the alternative, on this the Sixteenth Count of the Complaint as follows:

A.     Damages;

B.     Interest;

C.     Reasonable attorneys' fees;

D.     Costs of suit;

E.      A declaratory judgment; and

F.     Such further relief as the Court deems just and equitable under the circumstances.

## SEVENTEENTH COUNT
## CONSTRUCTIVE TRUST
### (As Against JRosenberg, LRosenberg, JER Rosenberg & Associates, Regency and IPI)

338.     Plaintiff repeats and realleges all of the previous allegations contained in the Complaint as if same were fully set forth herein at length.

339.     As a result of the fraud and other wrongful conduct of JER and JRosenberg as aforesaid, Plaintiff has been deprived of her Principal which has, upon information and belief been transferred to JRosenberg, LRosenberg, Rosenberg & Associates, Regency and/or IPI without consideration and/or with said defendants knowledge that they are not entitled to same.

340.     Upon information and belief, JRosenberg, LRosenberg, JER, Rosenberg & Associates, Regency and/or IPI are in possession of the monies due Plaintiff including, but not limited to, Plaintiff's Principal and the Collected Accounts.

341.     Upon information and belief, JRosenberg, LRosenberg, JER, Rosenberg & Associates, Regency and/or IPI are in possession of the collected and uncollected Debt Instruments that represent Plaintiff's interest in the Theta portfolio.

69

342.    Upon information and belief, IPI has paid the Repurchase Price to JER which has retained same for its own purposes and/or transferred all or a portion of the Repurchase Price to JRosenberg, LRosenberg, JER, Rosenberg & Associates, and/or Regency.

343.    Said defendants obtained and have had the benefit and use of Plaintiff's monies and property under circumstances contrary to equity and good conscience including, but limited to, the fraudulent and other tortious conduct of JRosenberg and JER.

344.    Accordingly, Plaintiff is entitled to have a constructive trust imposed on all monies and other property in the possession of said defendants that represent Plaintiff's Principal and/or which were derived from her Principal including, but not limited to, all management and other fees that they paid themselves on account of the Theta file, and the Collected Accounts.

WHEREFORE, Plaintiff demands judgment against defendants Jonathan Eric Rosenberg, JER, LRosenberg, Rosenberg & Associates, Regency and IPI, jointly, severally and/or in the alternative, on this the Seventeenth Count of the Complaint as follows:

A.    Damages;

B.    Imposing a constructive trust;

C.    Interest;

D.    Reasonable attorneys' fees;

E.    Costs of suit; and

F.    Such further relief as the Court deems just and equitable under the circumstances.

### EIGHTEENTH COUNT
### VIOLATION OF THE FEDERAL WIRETAP ACT,
### 18 U.S.C. § 2510-22
### (As against all Defendants except IPI)

345.    Plaintiff repeats and realleges all of the previous allegations contained in the Complaint as if same were fully set forth herein at length.

70

346.     At the time Rosenberg & Associates hired Plaintiff, it was aware that Plaintiff was engaged in the private practice of law and intended to continue to represent clients in addition to the Companies.

347.     As a condition of her employment, Rosenberg & Associates offered Plaintiff the use of its computer servers and networks to enable Plaintiff to continue to serve her clients.

348.     In doing so, Rosenberg & Associates agreed that any information and documents created and/or stored and/or transmitted by Plaintiff on or through Rosenberg & Associates' servers, computers and networks including, but not limited to, emails sent or received by Plaintiff, that related to Plaintiff's private, legal clients and her own respective legal matters (collectively "Legal Materials") were private, confidential and/or subject to the attorney-client privilege and that Rosenberg & Associates would not monitor, access, intercept or review such materials at any time.

349.     In addition, Rosenberg & Associates agreed that Plaintiff had the right to remove and/or copy all Legal Materials maintained on its computers, servers, other systems and in its offices at any time.

350.     The foregoing agreement was formally memorialized by a letter dated April 6, 2009 executed by JRosenberg as Vice President of Operations of Rosenberg & Associates.

351.     Contemporaneous with Rosenberg & Associates' termination of Plaintiff's employment by letter dated February 25, 2011, Rosenberg & Associates denied Plaintiff access to her Legal Materials including, but not limited to, emails previously received and transmitted to her, as well as emails that have been directed to her subsequent to February 25, 2011.

352.     By letter dated March 5, 2011 to LRosenberg, individually and as President of Rosenberg & Associates, Plaintiff requested access to her Legal Materials, reminded

LRosenberg of Rosenberg & Associates' obligations as memorialized in its April 6, 2009 letter, and asked that she confirm that "no one has nor will access the materials in [Plaintiff's former]… office or [her] emails at anytime in accordance with [Rosenberg & Associates'] agreement."

353.    In response, on March 7, 2011, Rosenberg & Associates' attorney, Charles Cohen, Esq. ("Cohen"), requested a copy of the April 6, 2009 letter.

354.    On March 10, 2011, Plaintiff provided Cohen a copy of the April 6, 2009 letter and requested an opportunity to retrieve her Legal Materials and personal property.

355.    Plaintiff further advised Cohen that the original of the April 6, 2009 letter was in her former offices at Rosenberg & Associates.

356.    To date, despite repeated requests, Cohen has failed to confirm that neither his clients nor any of their agents have accessed or attempted to access the Legal Materials.

357.    Title I of the Wiretap Act prohibits, among other things, "intentionally intercept[ing], endeavor[ing] to intercept, or procur[ing] any other person to intercept or endeavor to intercept, any [transitory] wire, oral, or electronic communication," and the intentional use or disclosure of the content procured by interceptions of transitory electronic communication. 18 U.S.C. § 2511

358.    Any person who violates the Wiretap Act is subject to a civil suit and liable, pursuant to 18 U.S.C. § 2520, for compensatory and punitive damages.

359.    Upon information and belief, JRosenberg and LRosenberg, individually and on behalf of JER, Rosenberg & Associates and Regency, have violated the Wiretap Act by intentionally, directly or indirectly intercepting transitory electronic communications directed to Plaintiff, including emails and telephone calls, and intentionally using or disclosing the content procured by the interception of such transitory electronic communications.

360.    As a direct and proximate result thereof, Plaintiff has been damaged.

361.    The aforesaid conduct of said defendants was willful, wanton, malicious and/or in reckless disregard of Plaintiff's rights.

WHEREFORE, Plaintiff demands judgment against defendants Jonathan Eric Rosenberg, Linda Rosenberg, JER, Rosenberg & Associates and Regency, jointly, severally and/or in the alternative, on this the Eighteenth Count of the Complaint as follows:

A.      Damages;

B       Punitive damages;

C.      Interest;

D.      Reasonable attorneys' fees;

E.      Costs of suit; and

F.      Such further relief as the Court deems just and equitable under the circumstances.

**NINETEENTH COUNT**
**VIOLATION OF THE FEDERAL STORED COMMUNICATIONS ACT,**
**18 U.S.C. §§ 2701-12**
**(As against All Defendants except IPI)**

362.    Plaintiff repeats and realleges all of the previous allegations contained in the Complaint as if same were fully set forth herein at length.

363.    Except as otherwise provided, the SCA prohibits (1) "intentionally access[ing] without authorization a facility through which an electronic communication service is provided"; or (2) "intentionally exceed[ing] an authorization to access that facility; and thereby obtain[ing], alter[ing], or prevent[ing] authorized access to a wire or electronic communication while it is in electronic storage in such system … ." 18 U.S.C. § 2701

364.    Any person who intentionally violates the SCA is subject to a civil suit by "any person aggrieved by any [such] violation," and is liable for "actual damages", punitive damages,

reasonable attorneys' fees and other litigation costs reasonably incurred, pursuant to 18 U.S.C. § 2707.

365.    Upon information and belief, all of the defendants, with the exception of  IPI, individually and collectively, intentionally violated the SCA by "access[ing] without authorization" Plaintiff's individual, assigned computer server directory" through which "electronic communication service is provided;" and/or (2) "intentionally exceed[ing Rosenberg & Associates'] authorization to access" Plaintiff's directory and "thereby obtain[ed], alter[ed]" and "prevent[ed]" Plaintiff from accessing her "electronic communications while [they were] in electronic storage in such system."

366.    As a direct and proximate result thereof, Plaintiff has suffered damages.

367.    The aforesaid conduct of said defendants was willful, wanton, malicious and/or in reckless disregard of Plaintiff's rights.

WHEREFORE, Plaintiff demands judgment against all Jonathan Eric Rosenberg, Linda Rosenberg, JER, Rosenberg & Associates and Regency, jointly, severally and/or in the alternative, on this the Nineteenth Count of the Complaint as follows:

A.    Damages;

B.    Punitive damages;

C.    Interest;

D.    Reasonable attorneys' fees;

E.    Costs of suit; and

F.    Such further relief as the Court deems just and equitable under the circumstances.

**TWENTIETH COUNT**
**VIOLATION OF THE FEDERAL COMPUTER FRAUD AND ABUSE ACT,**
**18 U.S.C. § 1030**
**(As against All Defendants except IPI)**

74

368.     Plaintiff repeats and realleges all of the previous allegations contained in the Complaint as if same were fully set forth herein at length.

369.     Plaintiff is an attorney admitted to practice law before the Courts of the States of New Jersey and New York, has provided legal services to clients in both States, and has transmitted and received electronic communications while in both States from such clients.

370.     Upon information and belief, all the defendants, with the exception of IPI, individually and collectively, intentionally violated the CFAA by, inter alia, accessing Plaintiff's computer without authorization or in excess of authorized access, and thereby wrongfully obtained information.

371.     As a direct and proximate result thereof, Plaintiff has suffered substantial damages and loss in an amount equaling at least $5,000 as a result of defendants' conduct.

372.     Plaintiff has sustained this damage and loss by, among other things, attempting to retrieve, restore, and replace the legal materials and data.

373.     The aforesaid conduct of said defendants was willful, wanton, malicious and/or in reckless disregard of Plaintiff's rights.

WHEREFORE, Plaintiff demands judgment against defendants, Jonathan Eric Rosenberg, Linda Rosenberg, JER, Rosenberg & Associates, and Regency, jointly severally and/or in the alternative, on this the Twentieth Count of the Complaint as follows:

A.     Damages;

B.     Punitive damages;

C.     Interest;

D.     Reasonable attorneys' fees;

E.     Costs of suit; and

F.      Such further relief as the Court deems just and equitable under the circumstances.

## TWENTY-FIRST COUNT
## VIOLATION OF THE NEW JERSEY WIRETAPPING
## AND ELECTRONIC SURVEILLANCE ACT
## (As against All Defendants Except IPI)

374.    Plaintiff repeats and realleges all of the previous allegations contained in the Complaint as if same were fully set forth herein at length.

375.    Upon information and belief, all of the defendants, except IPI, individually and collectively, have violated the WESA by, inter alia, directly or indirectly intercepting, endeavoring to intercept, or procuring another person to intercept or endeavor to intercept Plaintiff's electronic communications and/or disclosing or endeavoring to disclose to other persons the contents of Plaintiff's electronic communications.

376.    As a direct and proximate result thereof, Plaintiff has suffered substantial damages.

377.    Said Defendants' actions were willful, wanton, malicious and/or in reckless disregard of Plaintiff's rights.

WHEREFORE, Plaintiff demands judgment against Jonathan Eric Rosenberg, Linda Rosenberg, JER, Rosenberg & Associates, and Regency, jointly, severally and/or in the alternative, on this the Twenty-First Count of the Complaint as follows:

A.      Damages;

B.      Punitive damages;

C.      Interest;

D.      Reasonable attorneys' fees;

E.      Costs of suit; and

F.      Such further relief as the Court deems just and equitable under the circumstances.

49216/0001-7623450v4

## TWENTY-SECOND COUNT
## INTRUSION ON SECLUSION
## (As against all Defendants Except IPI)

378.    Plaintiff repeats and realleges all of the previous allegations contained in the Complaint as if same were fully set forth herein at length.

379.    Plaintiff had an expectation of privacy, regarding the Legal Materials and that Rosenberg & Associates would not monitor, access, intercept or review such materials at any time.

380.    Upon information and belief, all the defendants, with the exception of IPI, individually and collectively, intentionally intruded upon Plaintiff's seclusion and privacy in an unreasonable and highly offensive manner by monitoring, accessing, intercepting and/or reviewing Plaintiff's Legal Materials.

381.    As a direct and proximate result of defendants' tortious, highly offensive and unreasonable conduct, Plaintiff has suffered substantial damages.

382.    Said defendants' conduct was willful, wanton, malicious and/or in reckless.

WHEREFORE, Plaintiff demands judgment against defendants, Jonathan Eric Rosenberg, Linda Rosenberg, JER, Rosenberg & Associates, and Regency, jointly severally and/or in the alternative, on this the Twentieth Count of the Complaint as follows:

A.    Damages;

B.    Punitive damages;

C.    Interest;

D.    Reasonable attorneys' fees;

E.    Costs of suit; and

49216/0001-7623450v4

F.      Such further relief as the Court deems just and equitable under the circumstances.

<div align="center">

**TWENTY-THIRD COUNT**
**VIOLATION OF NEW JERSEY'S COMPUTER-RELATED**
**OFFENSES ACT, N.J. Statute 2A:38A-3**
**(As against all Defendants Except IPI)**

</div>

383.    Plaintiff repeats and realleges all of the previous allegations contained in the Complaint as if same were fully set forth herein at length.

384.    All of the defendants, with the exception of IPI, are aware that Plaintiff has, with the express written permission of Rosenberg & Associates, used its computers, computer system, computer network, computer programs and software for the purpose of providing services to her private legal clients.

385.    Upon information and belief, said defendants have violated the Computer Offense Act, inter alia, by purposefully and/or knowingly, and/without authorization (a) altering, damaging, taking or destroying Plaintiff's data, existing internally or externally to the computer formerly used by her at Rosenberg & Associates and/or Rosenberg & Associates' computer system or computer network; (b) accessing or attempt to access same; and/or (c) accessing and recklessly altering, damaging, destroying or obtaining such data.

386.    As a direct and proximate result of defendants' violations of the Computer Offense Act, as aforesaid, Plaintiff has suffered substantial damages.

387.    Said defendants' conduct was willful, wanton, malicious and/or in reckless.

WHEREFORE, Plaintiff demands judgment against defendants Jonathan Eric Rosenberg, Linda Rosenberg, JER, Rosenberg & Associates, and Regency, jointly, severally and/or in the alternative, on this the Twenty-Second Count of the Complaint as follows:

A.      Damages;

<div align="center">78</div>

B.      Punitive damages;

C       Interest;

D.      Reasonable attorneys' fees;

E.      Costs of suit; and

F.      Such further relief as the Court deems just and equitable under the circumstances.

### TWENTY-FOURTH COUNT
### ACCOUNTING
### (As Against JER, IPI and JRosenberg)

388.    Plaintiff repeats and realleges all of the previous allegations contained in the Complaint as if same were fully set forth herein at length.

389.    Upon information and belief, subsequent to the date of the Purchase Agreement, JER and/or IPI received payments on behalf of Plaintiff with respect to the Collected Accounts, of which only $2,812.90 was remitted to Plaintiff.

390.    Upon information and belief, the sums collected on Plaintiff's behalf with respect to the Collected Accounts far exceed $2,812.90 and JER and/or IPI are in possession of the sums collected in excess thereof or have depleted such monies for their own use and purposes.

391.    Upon information and belief, IPI paid JRosenberg and/or JER a finder's fee and JER paid itself and JRosenberg management fees in an amount unknown to Plaintiff, based on Plaintiff's loan to JER and that were calculated according to the value of the Debt Instruments that were purportedly purchased with Plaintiff's Principal, and the collection results with respect to same.

392.    JRosenberg and JER have been unjustly enriched by the retention of such finder's fee and management fees since such fees were paid based on the breached Restated Note and upon services that they never performed.

393.     Upon information and belief, IPI has paid JER all or a portion of the Repurchase Price under the Repurchase Agreement which JER received on behalf of Plaintiff, and JER has failed to turn such sums over to Plaintiff despite demand therefor.

394.     Plaintiff is unable to ascertain all monies paid to JER and JRosenberg with respect to the Collected Accounts and the Repurchase Price.

395.     Plaintiff is unable to ascertain all fees paid by IPI to JER and/or JRosenberg based upon Plaintiff's Principal.

396.     JRosenberg and JER have refused to account for all monies received on Plaintiff's behalf and as a result of Plaintiff's loan despite demand therefor.

397.     As a result, Plaintiff is are entitled to a full and accurate accounting of all transactions relating to her interest in the Theta account including, but not limited to, all medical accounts collected with respect thereto, all amounts paid by IPI with respect to the Repurchase Agreement, and any finder's fee and/or management fees paid to JER and/or JRosenberg.

WHEREFORE, Plaintiff demands judgment against defendants Jonathan Eric Rosenberg, JER and IPI, jointly, severally and/or in the alternative, on this the Twenty-Third Count of the Complaint as follows:

A.     Damages;

B.     An accounting;

C.     Interest;

D.     Reasonable attorneys' fees;

E.     Costs of suit; and

F.     Such further relief as the Court deems just and equitable under the circumstances.

## TWENTY-FIFTH COUNT
## ALTER EGO LIABILITY AS TO JER

398.    Plaintiff repeats and realleges all of the previous allegations contained in the Complaint as if same were fully set forth herein at length.

399.    JRosenberg is the founder of JER, its President, Managing Member and, upon information and belief, its sole officer.

400.    At all relevant times JRosenberg managed all aspects of JER's business, exerted total control over JER's bank accounts and directed all of its activities.

401.    Upon information and belief, JRosenberg has treated JER as an alter ego of himself by, among other matters, using Plaintiff's Principal, monies collected that represent her pro-rata interest in the Theta debt portfolio, and the monies solicited from investors to pay his own personal expenses, including but not limited to (a) the lease for a Bentley automobile  (b) the construction and furnishing of a home theatre in his residence in West Orange;  (c) restaurant and family vacations;  (d) the salary paid to his personal assistant who performs little or no duties for JER and who spends the majority of his time performing personal errands for JRosenberg and his family;  (e) the fees for his family's membership at Green Brook Country Club; and (f) tickets to various entertainment events, expensive clothing and other personal items.

402.    Upon information and belief, JRosenberg has treated JER as an alter ego of himself by, among other matters, using Plaintiff's Principal and monies collected that represent her pro-rata interest in the Theta debt portfolio to pay the BoA Loan in order to avoid his obligations under the BoA Guaranty.

403.    At all relevant times, JRosenberg treated JER as an alter ego of himself, disregarded the corporate form, and used JER as a vehicle by which he has been able to perpetuate an on-going fraud upon Plaintiff and engage in otherwise tortious conduct as a direct and proximate result of which Plaintiff has sustained, and continues to sustain, damages.

49216/0001-7623450v4

WHEREFORE, Plaintiff demands judgment against defendants Jonathan Eric Rosenberg and JER, jointly and severally or in the alternative on this the Twenty-Fourth Count of the Complaint as follows:

A.      Damages;

B.      Interest;

C.      Reasonable attorneys' fees;

D.      Costs of suit; and

E.      Such further relief as the Court deems just and equitable under the circumstances.

### TWENTY-SIXTH COUNT
### ALTER EGO LIABILITY AS TO REGENCY

404.    Plaintiff repeats and realleges all of the previous allegations contained in the Complaint as if same were fully set forth herein at length.

405.    JRosenberg is the President and sole owner of Regency.

406.    At all relevant times JRosenberg managed all aspects of Regency's business, directly and through his "proxies," Rosenberg & Associates and LRosenberg, exerted total control over Regency's bank accounts and directed all of its financial activities.

407.    Upon information and belief, JRosenberg has treated Regency as an alter ego of himself and of JER by, among other matters, using Plaintiff's Principal and monies collected that represent her pro-rata interest in the Theta debt portfolio to pay the BoA Loan and in order to avoid his obligations under the BoA Guaranty.

408.    At all relevant times, JRosenberg treated Regency an alter ego of himself and/or JER, disregarded the corporate form, and used Regency as a vehicle by which he has been able to perpetuate an on-going fraud upon Plaintiff by using the monies due her pursuant to the

Restated Note and Personal Guaranty to pay the BoA Loan Agreement to which Regency is a party.

409.    Accordingly, Regency and JRosenberg are jointly and severally liable to Plaintiff for the damages she sustained as a direct and proximate result of defendants' tortious and otherwise wrongful conduct.

WHEREFORE, Plaintiff demands judgment against defendant Jonathan Eric Rosenberg and Regency, jointly, severally and/or in the alternative on this the Twenty-Fifth Count of the Complaint as follows:

A.    Damages;

B.    Interest;

C.    Reasonable attorneys' fees;

D.    Costs of suit; and

E.    Such further relief as the Court deems just and equitable under the circumstances.

<div align="center"><b>TWENTY-SEVENTH COUNT<br>ALTER EGO LIABILITY AS TO ROSENBERG & ASSOCIATES</b></div>

410.    Plaintiff repeats and realleges all of the previous allegations contained in the Complaint as if same were fully set forth herein at length.

411.    LRosenberg is the President and majority shareholder of Rosenberg & Associates, and JRosenberg is a Vice President of Rosenberg & Associates.

412.    At all relevant times LRosenberg and JRosenberg managed all aspects of Rosenberg & Associates' business, exerted total control over its bank accounts and directed all of its activities.

413.    Upon information and belief, LRosenberg has treated Rosenberg & Associates as an alter ego of herself by, among other matters: (a) utilizing its personnel to perform personal

services for LRosenberg, including painting the interior of her summer of home in Spring Lake, New Jersey, returning purchases made by her to Neiman Marcus and Chanel in the Short Hills Mall, chauffeuring her to and from "beauty" appointments, dinner engagements, and entertainment events, and reconciling her monthly, investment statements and personal credit card expenditures; (b) maintaining her personal housekeeper on Rosenberg & Associates' payroll;  (c) using company monies to pay for personal expenses including private audio-video rooms in her homes in Maplewood, New Jersey and Bal Harbour, Florida, dining expenses, cosmetic procedures, automobiles for her family and her purported paramour, Antney, including a Bentley and Mercedes Maybach, and to pay for all costs associated with Corner Store Media, LLC, a company that she has referred to as her "hobby", including its personnel, publishing costs, photo shoots, travel expenses, entertainment;  (d) enrolling whomever she chooses in the company's medical benefits program including Antney, her housekeeper, and family members who are not entitled to benefits under the company plan;  and (e) requiring Plaintiff, in the scope of her former employment as Rosenberg & Associates' General Counsel, to perform personal legal work for LRosenberg and her friends and family.

414.    In addition, LRosenberg and JRosenberg have treated Rosenberg & Associates as an alter-ego of JER by, among other matters:  (a) diverting money owed to JER creditors, such as Plaintiff, to pay Rosenberg & Associates' expenses including its payroll and court reporting fees; (b) promoting JER to Rosenberg & Associates staff, including specifically during a company 401K meeting in December 2009, notwithstanding Plaintiff's express objections;  (c) upon information and belief, directly soliciting loans or investments in JER from Rosenberg & Associates personnel by, among other things, holding a group meeting with Rosenberg & Associates employees or about December 21, 2010, without Plaintiff's knowledge (d) enlisting

Rosenberg & Associates' personnel to promote and solicit investors in JER to clients of Rosenberg & Associates and the Companies; (e) permitting JER to operate from Rosenberg & Associates' offices without requiring JER to pay rent, and using Rosenberg & Associates' phones, computers, servers;  (f) maintaining JER staff members on Rosenberg & Associates' payroll; (g) receiving checks mailed to Rosenberg & Associates' offices from JER's offices in Macedon, New York and distributing same to employees of Rosenberg & Associates who were creditors of or investors in JER;  and (h) upon information and belief, using Rosenberg & Associates postage meter to facilitate the distribution of JER promotional materials, that were duplicated on Rosenberg & Associates' equipment, through inter-state commerce.

415.    Upon information and belief, LRosenberg has treated Rosenberg & Associates as an alter ego of herself, and of JER, and disregarded the corporate form.

416.    Upon further information and belief, LRosenberg and JRosenberg have treated Rosenberg & Associates as an agent and/or alter ego of JER and of each other, and/or permitted JRosenberg to treat Rosenberg & Associates as an alter-ego of himself and/or JER.

417.    Based on the foregoing, Linda Rosenberg, Rosenberg & Associates and JER are jointly and severally liable to Plaintiff for the damages she sustained as a direct and proximate result of the tortious and otherwise wrongful conduct of defendants.

WHEREFORE, Plaintiff demands judgment against defendants Linda Rosenberg, Jonathan Eric Rosenberg, Rosenberg & Associates and JER jointly, severally and/or in the alternative, on this the Twenty-Sixth Count of the Complaint as follows:

A.    Damages;

B.    Interest;

C.    Reasonable attorneys' fees;

D.      Costs of suit; and

E.      Such further relief as the Court deems just and equitable under the circumstances.

## TWENTY-EIGHTH COUNT
## TORTIOUS INTERFERENCE WITH CONTRACT AND PROSPECTIVE ECONOMIC ADVANTAGE (As Against JRosenberg, JER, Rosenberg & Associates and Johns Doe 1-10)

418.    Plaintiff repeats and realleges all of the previous allegations in the Complaint as if same were fully set forth therein at length.

419.    Plaintiff had an Employment Agreement with Rosenberg & Associates which included terms based on the assumption that her employment would continue at least through May 1, 2015, had been employed by Rosenberg & Associates since June 2002 and, therefore, had a reasonable expectation of continued employment with Rosenberg & Associates.

420.    Upon information and belief, JRosenberg, JER and/or Johns Doe 1-10 intentionally interfered with Plaintiff's employment relationship with Rosenberg & Associates by pressuring LRosenberg, the President and majority shareholder of Rosenberg & Associates, to fire Plaintiff in order for JRosenberg and JER to obtain, among other things, a better settlement with Plaintiff concerning the monies owed Plaintiff under the Restated Promissory Note, Guaranty and Settlement Agreement.

421.    As a direct and proximate result of the aforesaid conduct of JRosenberg, JER and/or Johns Doe 1-10 Plaintiff was terminated by Rosenberg & Associates without cause on February 25, 2011.

422.    The aforesaid conduct of JRosenberg, JER and/or Johns Doe 1-10 constituted, inter alia, a tortious interference with Plaintiff's contractual relations with Rosenberg & Associates and a tortious interference with Plaintiff's prospective economic advantage.

49216/0001-7623450v4

423.    The aforesaid conduct of JRosenberg, JER and/or Johns Doe 1-10 was willful, wanton, malicious and in reckless disregard of Plaintiff's rights and were condoned and ratified by Rosenberg & Associates.

424.    As a result thereof, Plaintiff has suffered substantial damages.

WHEREFORE, Plaintiff demands judgment against JRosenberg, JER, Rosenberg & Associates, and Johns Doe 1-10, jointly, severally and/or in the alternative, on this the Twenty-Seventh Count of the Complaint as follows:

A.  Damages;

B.  Punitive damages;

C.  Interest;

D.  Reasonable attorneys' fees;

E.  Costs of suit; and

F.  Such further relief as this Court deems just and equitable under the circumstances.

## TWENTY-NINTH COUNT
## PROMISSORY ESTOPPEL-EMPLOYMENT AGREEMENT
### (As Against JRosenberg, LRosenberg and Rosenberg & Associates)

425.    Plaintiff repeats and realleges all of the previous allegations contained in the Complaint as if same were fully set forth herein at length.

426.    As set forth above, on multiple occasions, LRosenberg and JRosenberg assured Plaintiff that they did not want her to resign, made numerous promises to her regarding the terms of her employment, all of which were acceptable to her, upon which she reasonably relied and upon which the parties based their conduct, and which were ultimately memorialized in the unsigned Employment Agreement that the LRosenberg represented to Plaintiff was acceptable to her and Rosenberg & Associates.

427.    In reliance upon the Rosenbergs' repeated representations and assurances, as aforesaid, Plaintiff agreed not to resign and to continue in her employment as General Counsel and Chief Operation Officer of the Companies.

428.    In addition, based upon the demands of her employment, Plaintiff was unable to promote her own private practice and, as she informed JRosenberg on or about August 27, 2008, and LRosenberg thereafter, began to refer her clients to Post Polak.

429.    Plaintiff detrimentally relied on the Rosenbergs' repeated promises and assurances that they appreciated and valued her sacrifice on behalf of the Companies and would ensure she was protected, by foregoing the opportunity to seek other employment opportunities and/or expand her own business and instead referring her clients to other attorneys for services.

430.    As a result of Plaintiff's reasonable reliance, as aforesaid, from the time that the Rosenbergs first assured Plaintiff that Rosenberg & Associates would enter into the Employment Agreement with Plaintiff until her termination, the revenues generated by Plaintiff's private practice precipitously declined and her client-base eroded.

431.    As a result of the above, said Defendants should be estopped from denying, inter alia, the existence of the Employment Agreement.

432.    As a direct and proximate result thereof, Plaintiff has suffered substantial damages.

WHEREFORE, Plaintiff demands judgment against Defendants, JRosenberg, LRosenberg and Rosenberg & Associates, jointly, severally and/or in the alternative, on this the Twenty-Ninth Count of the Complaint as follows:

A.  Damages;

B.  Interest;

C.  Reasonable attorneys' fees;

88

D.  All benefits and perquisites of employees;

E.  An accounting of all sums due under the Employment Agreement.

F.  Costs of suit; and

G.  Such further relief as the Court deems just and equitable under the circumstances.

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.
Attorneys for Plaintiff
Lauren X. Topelsohn


By: _s/ Steven I. Adler_____
    STEVEN I. ADLER

Dated:  August 25, 2011

49216/0001-7623450v4

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all claims so triable.

<div style="margin-left: 40%;">

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.
Attorneys for Plaintiff
Lauren X. Topelsohn


By: *s/ Steven I. Adler*
    STEVEN I. ADLER

</div>

Dated:  August 25, 2011

49216/0001-7623450v4